CAMPBELL and another, Respondents, vs. GERMANIA FIRE INSURANCE COMPANY OF NEW YORK, Appellant.

*May 2—May 23, 1916.*

*Appeal: Questions of fact: Harmless errors: Evidence: Temporary exclusion: Waiver of right to introduce: Witnesses: Refreshing memory : Conspiracy: Admissions: Weight: Instructions to jury: Fire insurance: Fraud: Removal of property: Destruction in new location.*

1. Findings by a jury, approved by the trial court, will not be set aside on appeal if supported by any believable evidence,—that is, unless the evidence is contrary to all reasonable probabilities; and so long as there is a state of evidence requiring conflicting probabilities to · be considered, a jury determination either way cannot be said to be against all reasonable probabilities.

2. Where the court temporarily sustained an objection to a question because of want of sufficient foundation therefor, but indicated that the evidence might be admissible later, saying that the right to recall the witness might be reserved, and, although the basis for the question was thereafter much strengthened, the witness was not recalled, the right to have such question answered was waived.

3. This court will not reverse a judgment because of the rejection of evidence, unless its materiality clearly appears and it likewise appears that the exclusion might have affected the result unfavorably to the party complaining.

4. In an action on a fire insurance policy, plaintiff having testified that a list of articles claimed to have been destroyed was correct when made by her and defendant's agent shortly after the fire and that a paper she had was a correct copy thereof, and the absence of the original having been satisfactorily explained, it was proper to allow her to use such copy to refresh her memory or to read from it, or to allow it to be introduced as part of her evidence.

5. Where a case is submitted for a special verdict, the court may properly refuse to give requested instructions which are worded as if the verdict was to be a general one.

6. An instruction, in an action on a fire insurance policy, that "you will recall the evidence that a great many articles of personal property were totally destroyed and that some articles were not destroyed but were damaged," is held to be in accord with the evidence and not to involve the suggestion that none of the articles of personalty were saved.

7. Where the nature of an alleged confession—in this case a confession by a husband to the fire marshal that he and his wife had set the fires which destroyed their insured property—was such as to arouse a suspicion that it was not made freely and intelligently, and the circumstances under which it was made were consistent with that view, there was no prejudicial error in instructing the jury that the alleged admissions were not entitled to weight unless the jury were satisfied that they were freely made and not under such compulsion, threats, intimidation, promises of immunity, or persuasion as to prevent him from being a free agent in the matter.

8. The husband in such case must have known that if the fact were established that he and his wife set the fires it would be fatal to the full accomplishment of any conspiracy by them to burn the property and collect the insurance; hence, on the theory that a confession by him would evidence an abandonment of the conspiracy, it was not error, in an action by the wife on the insur-

ance policy, to instruct the jury that if such a conspiracy was formed, as claimed by the defendant, but had been abandoned by the husband before the alleged confession was made, no weight should be given to the evidence of such confession.

9. Where a fire insurance policy provided that property removed from its insured location on account of a fire should be deemed covered by the insurance in its new location for a period of five days, furniture and goods which were removed from a burning house (their insured location) and stored in a barn on the premises, and there destroyed by fire three days later, were within the recoverable loss.

APPEAL from a judgment of the circuit court for Pepin county: GEORGE THOMPSON, Circuit Judge. *Affirmed.*

Action to recover on a fire insurance policy dated May 29, 1911, issued by the defendant to one Alfred Campbell on a dwelling house, the furniture therein, and a barn and personalty therein. The property was originally insured for $1,500, but the amount was afterwards increased to $1,200 on the house and $1,000 on furniture therein, $250 on the barn, and $100 on contents of the barn. Later, Campbell duly sold and transferred the insured property to his wife, the plaintiff *Mary E. Campbell,* and duly assigned his interest in the policy to her, which was consented to by defendant. By the terms of the policy, the loss, in case of there being any, was made payable to B. M. Catura, mortgagee, as his interest might appear, and plaintiff *William Catura,* when the loss occurred, was owner of the mortgage interest. About October 21, 1912, the buildings and part of the contents were destroyed by fire and proofs of loss were made, claiming a liability of defendant to the amount of $2,550. This action was brought to recover the same, all facts being alleged in the complaint necessary thereto.

Defendant answered, pleading breach of a condition of the policy, rendering it void in case of any fraud or false swearing by the assured touching any matter relating to the insurance or the subject thereof, either before or after a loss, such breach consisting of plaintiff *Campbell* knowingly represent-

ing that the fire originated from an unknown cause when she knew that she, with the aid of her husband, set fire to the property, purposing to destroy it and to collect the insurance of defendant, claiming a sum largely in excess of its value or of the damage thereto.

Defendant further pleaded in defense a breach of the aforesaid condition in that plaintiff *Campbell,* in her proofs of loss, knowingly greatly overstated the value of the property covered by the policy and overstated the loss of and damage thereto.

Defendant further pleaded failure of plaintiff *Campbell* to use all reasonable means to save and preserve the property at and after the fire, under a provision of the policy exempting defendant from any loss occasioned by any such failure.

Defendant further pleaded that plaintiff *Campbell,* and her husband, conspired to obtain insurance on the property for an amount greatly in excess of its value and then to burn the same and that, in furtherance of such conspiracy, they set the fire.

There was evidence to this effect: The dwelling house was a two-story structure, divided into seven rooms on the first floor and three on the second. It was occupied by the Campbell family. October 19, 1912, while one Bein, and his son, were there to fix a chimney, he assisted in putting up a wood heating stove in the parlor. The pipe led to the story above through a thimble and then to the chimney. A fire was started in the stove about 11 o'clock. At dinner time the odor of smoke was observed and shortly thereafter smoke was seen issuing from the upper windows. Neighbors assembled and much of the furniture was removed. Bein and others put out the fire and investigated its origin, Bein cutting a hole in the roof for that purpose. There were indications that it started at the thimble in the floor. There was conflicting evidence as regards whether kerosene or gasoline had been used in the vicinity of where the fire started and other places. After the fire was put out, Mr. Campbell went to a grist mill. About 5 o'clock p. m. the house, in the upper

part, was observed to be on fire again.. In the meantime most of the things which were removed on the occasion of the first fire had been put back into the house, but largely on the first floor. *Mrs. Campbell's* preserved fruit had been removed from the cellar and not put back. A trunk, packed with clothes, belonging to her and the children and weighing some 200 pounds, was carried out on the porch before the first fire. It was said to have been prepared by *Mrs. Campbell* to take with her, in a few days, on a visit to her father. The trunk and contents were saved. Bein and others again investigated as to the origin of the fire, he going down through the hole he had previously cut in the roof. The fire was found near the thimble and was put out. There was conflicting evidence as to whether Mr. Campbell was there and as to whether there were indications of gasoline or kerosene having been used. There was evidence to the effect that Campbell did not return from his trip to mill until after the second fire. About 10:30 o'clock at night, fire broke out in the upper part of the house a third time, resulting in complete destruction of the building. There were twenty minutes or so when it was feasible to remove things from the lower part of the house. There was further evidence to this effect: Much of the furniture was removed from the lower room. *Mrs. Campbell's* time was taken up largely with her children. Mr. Campbell was a cripple. The work of saving things was done by the neighbors. The next Monday morning the barn burned down. The night before, Campbell took a horse therefrom and put it into a neighbor's barn. He was advised to do so, particularly, by a neighbor, because of danger of the barn taking fire from the smouldering ruins of the house. Campbell was in bed when the fire started. It might have caught from sparks or brands carried to it by the wind from the ruins of the house fire. Some time after the fires occurred, *Mrs. Campbell* and her husband were examined, apart from each other, in respect thereto, by the attorney for the state

fire marshal.    The marshal was present.    *Mrs. Campbell* re-
lated the circumstances of the fire.    The evidence was con-
flicting as to what occurred.    She claimed that the examiners
endeavored to intimidate her into confessing that she was in-
strumental in starting the fires and had not told the truth in
stating that she did not know how they originated, and tried
to induce her to sign a statement they prepared without her
knowing its contents.    At the examination of Mr. Campbell,
according to the testimony of the fire marshal's attorney, he
freely and unhesitatingly and without being urged to do so,
said he and *Mrs. Campbell* set the fires in the house, using
kerosene in doing so, and that he, later, set fire to the barn.
He signed a statement to that effect.    Some time afterwards
the fire marshal again examined the Campbells, at which time
*Mrs. Campbell* adhered to what she said on the previous oc-
casion, and Mr. Campbell changed his attitude in respect to
the matter.    After the last examination, the Campbells were
arrested on the charge of having set the fires.    On the hear-
ing before the examining magistrate, the fire marshal testified
to what occurred between him, his attorney, and the Camp-
bells.. Such attorney did not testify.    He aided the district
attorney.    The result was that the Campbells were dis-
charged.    On the trial of this case, the fire marshal's attor-
ney testified to what the marshal did at the inquest and the
latter was not called.    There was a conflict as to whether the
proofs of loss included things which were saved from the fire.
*Mrs. Campbell* testified that it did not; that the agent of de-
fendant soon after the loss occurred, assisted her in making
the list of property burned and that they made it as accurately
as they could.    Absence of that list was so satisfactorily ex-
plained that she was permitted to use, to refresh her memory,
what she testified was a correct copy after having testified
that when the original was made she knew it was correct or
substantially so.    By using the copy she testified, in detail,
to the articles of personalty lost.    She also testified, at
length, to the circumstances of the fires, positively denying all

knowledge of their origin and explaining or denying all statements of witnesses as to suspicious circumstances. There was considerable corroborating evidence in her favor, and a conflict in the evidence on all points submitted to the jury. The contested matters upon the evidence were submitted with the following result:

(1) Plaintiff *Campbell* suffered a loss by the fires in question, on personalty insured, in the sum of $1,210.75. (2) She did not, in her proofs of loss, knowingly swear falsely as to the value of the personal property described in the policy, or as to the loss occasioned by, or origin of, the fires. (3) The fires which resulted in such loss were not caused by her voluntary act, assent, procurement, or design. (4) She did not neglect to use every reasonable means to save and preserve the property at and after the fires.

No objection was made to the questions submitted, or request made to submit additional questions.

Defendant took appropriate steps to save for review the matters referred to in the opinion.

Judgment was rendered in favor of the plaintiffs for the loss covered by the policy in conformity to the verdict of the jury.

For the appellant there was a brief by *Charles B. Obermeyer, E. S. Pattison,* and *C. A. Ingram,* and oral argument by *Mr. Ingram* and *Mr. Obermeyer.*

*W. E. Plummer,* for the respondents.

MARSHALL, J. No time need be spent on whether any of the findings of fact are contrary to the evidence. We are relieved therefrom because, as indicated in the statement, there was a conflict of evidence on all material issues, requiring them to be submitted to the jury, and because counsel for appellant concede in their brief, as they did on the oral argument, that such is the case. The most claimed is that there are findings, vital to the judgment, which are against the great preponderance of the evidence. If that were so, it

would not warrant setting aside the decision by the jury, confirmed, as it was, by the trial judge.

No rule is more firmly established than that findings by a jury, approved by the trial court, are proof against attack here, if supported by any believable evidence, in any reasonable view of it.    An appearance, by the history of the trial, that such findings are against the preponderance, or the great preponderance of the evidence, is unimportant, unless such preponderance so conclusively proves the contrary of such findings as to leave no jury question in respect to the matter.

In view of the foregoing, it must be held that the findings here are to be regarded as verities.    On the question of whether there is any believable evidence to sustain a verdict, this court has said there is not when it is contrary to all reasonable probabilities, *Meyer v. Home Ins. Co.* 127 Wis. 293, 106 N. W. 1087; but so long as there is a state of evidence requiring conflicting probabilities to be considered, a jury determination either way cannot be said to be against all reasonable probabilities, even though the evidence of one witness,— unimpeached by matters of common knowledge, or conceded facts, or established physical situations,—stands opposed by the evidence of several witnesses.    That is the effect of *Badger v. Janesville C. Mills,* 95 Wis. 599, 70 N. W. 687; *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 615, 71 N. W. 1034; *Flaherty v. Harrison,* 98 Wis. 559, 74 N. W. 360; *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382, 80 N. W. 467; *Samulski v. Menasha P. Co.* 147 Wis. 285, 133 N. W. 142.

In the last case cited, the rule that evidence on one side of a controversy will warrant setting aside, on appeal, of a jury finding in favor of the other, was confined to instances where the finding is contrary to unquestionable physical situations or common knowledge, or conceded facts.    Mere weight of probabilities or inferences against the findings is not sufficient.    It is needless to add that the situation here does not satisfy that test, and that the judgment must be regarded as

right unless some error was committed on the trial which may probably have influenced the jury unfavorably to appellant.

Mr. Bein, who testified to having discovered the place of origin of the second fire and put it out, said that when he reached such place, Alfred Campbell was near by and he had a conversation with him. Evidence had already been introduced respecting some suspicious circumstances indicating that the fire was of incendiary origin and that Campbell and his wife might be the guilty parties. In that situation, Bein was twice asked, "Did you have a conversation with him at that time?" and the witness answered in the affirmative. He was then asked, "What was that conversation?" The court finally sustained an objection to the question for want of sufficient foundation therefor, indicating that the evidence might be admissible further on by saying, "You may, however, reserve the right to recall the witness later." That right was not exercised. It is contended that prejudicial error was committed at this point.

The inquiry and objection mentioned presented a question of competency. The court did not exclude the proffered evidence, except temporarily. As counsel did not return to the subject, though the basis therefor was much strengthened and the door was carefully left open therefor, it must be held that the matter was waived. Moreover, the nature of the question was such that, in the most favorable light for appellant, prejudicial error does not affirmatively appear. The question did not necessarily suggest that the conversation was in respect to any circumstance of a criminating nature. There was no suggestion in it, or aside, to indicate the materiality of the conversation. This court will not reverse a judgment because of the rejection of evidence, unless its materiality clearly appears and it likewise appears that the exclusion might have affected the result unfavorably to the party complaining.

It is further contended that error was committed because

*Mrs. Campbell* was permitted to testify to the amount of the loss she sustained, using a copy of the list of articles claimed to have been destroyed which she and appellant's agent made shortly after the fire.   She testified, as indicated in the statement, in effect, that she knew the original list was correct when made and that the paper she used to testify from was a correct copy thereof, and satisfactory proof was made as to absence of such original.   Under those circumstances it was proper to allow her to use the copy to refresh her memory, or to read from it, or to allow it to be introduced as part of her evidence.   *Bourda v. Jones,* 110 Wis. 52, 58, 85 N. W. 671; *Manning v. School Dist.* 124 Wis. 84, 102 N. W. 356; Jones, Ev. §§ 877 to 881, inclusive.

Several instructions requested which the court refused to give, were worded appropriately for submission of the case for a general verdict.   They were in form that, if the jury believed from the evidence specified things "the plaintiff is not entitled to recover in this action," or "your verdict should be for the defendant."   The form of the requests warranted their rejection.   *Johnson v. St. Paul & W. C. Co.* 126 Wis. 492, 105 N. W. 1048; *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48; *Odegard v. North Wis. L. Co.* 130 Wis. 659, 110 N. W. 809.   The trial court gave instructions applicable to each of the special questions and no additional instructions of that character were requested which were not sufficiently covered by those which were given.

Complaint is made because the court, in instructing the jury on the question relating to the amount of loss, said: "You will recall the evidence that a great many articles of personal property were totally destroyed and that some articles were not destroyed but were damaged."   It is said that such language involved the suggestion that none of the articles of personalty were saved.   It does not seem so.   The instruction was in exact accord with the evidence.   If counsel for appellant supposed that any explanatory instruction was

necessary to guard against the jury being misled, they should have requested such.   It does not appear that there was any such danger.

The jury were instructed that the alleged admissions of Campbell were not entitled to weight unless the jury were satisfied that such admissions were freely made and not under such compulsion, threats, intimidation, promises of immunity, or persuasion, as to prevent him from being a free agent in the matter.   Complaint is made of that, solely upon the ground that there was no evidence warranting it.   The admissions claimed, as indicated in the statement, amounted to a confession by Campbell to a public official that he and his wife were guilty of the crime of arson in respect to the destruction of the property.  The instructions, in the abstract, were correct.   *Keenan v. State,* 8 Wis. 132; *Connors v. State,* 95 Wis. 77, 69 N. W. 981; *Hintz v. State,* 125 Wis. 405, 104 N. W. 110.   The circumstances under which the alleged confession was made furnished some basis for the cautionary instructions.   Probably the character of Campbell had something to do with the matter.   He was called from his working place in the woods by a state official and his attorney, and, in a room away from his wife, who was likewise called, and apart from any one else, he was subjected to a long investigation.   The nature of the alleged confession probably aroused suspicion as to its having been given freely and intelligently.   According to the witness who testified on the subject, Campbell rather volunteered to accuse himself and his wife, with whom he was living agreeably, of having committed a most serious crime.   Notwithstanding the witness testified that the confession was freely made, the circumstances were consistent with a contrary view.   *Mrs. Campbell,* who was examined by the investigator about the same time, testified that an effort was made to intimidate her and to entrap her into signing a statement they had prepared, without her knowing its contents.   Under all the circum-

stances, it seems it was not prejudicial error, if error at all, to give the instructions. The jury heard the evidence. They were not obliged to believe it. They were left entirely free to pass thereon and to give due weight thereto in case of their coming to the conclusion that the conditions mentioned in the instructions were satisfied.

The jury were instructed that if a conspiracy was formed to burn the property and collect the insurance, as defendant claimed, but it had been abandoned by Campbell before the alleged confession was made, no weight should be given to the evidence of such confession. As matter of abstract law, that is correct. *Miller v. State,* 139 Wis. 57, 89, 119 N. W. 850. "When the common enterprise is at an end, whether by accomplishment or abandonment, no one of the conspirators is permitted, by any subsequent act or declaration of his own, to affect the others." Wharton, Crim. Ev. (9th ed.) sec. 699. True, in case of such a conspiracy as is claimed to have existed here, the common design cannot be said to have been accomplished until the insurance shall have been obtained. If counsel for appellant had desired the instruction given to be accompanied by an explanatory feature, they should have requested it. There was certainly evidence of an abandonment by Campbell of the fraudulent design, if one had been formed, as claimed. If he confessed to having, in concert with his wife, set the fires, he must have known that if such were established to be the fact, it would be fatal to the full accomplishment of such design. Doubtless it was upon the theory that such a confession would evidence an abandonment of the conspiracy that the instruction was given. So looking at the matter, which we think is a reasonable view to take, there was a sufficient basis for the instruction to preclude condemning the giving of it as fatal error.

No question is raised but what all the property destroyed was covered by the policy of insurance. It was conceded on the argument that such was the case, but whether such property as was removed from the house and stored in the barn on

the premises and there destroyed was within the recoverable
loss, counsel, when interrogated in respect to the matter on
the argument, did not seem prepared to affirm or deny, but it
seems to be definitely covered by the policy. That contains
a provision to the effect that, property removed from its in-
sured location on account of a fire shall be deemed covered by
the insurance in its new location for the period of five days.
It may well be that considerable of the furniture and goods
which were in the house were removed therefrom and stored
in the barn and there destroyed. There is evidence that such
was the fact. . That tends, strongly, to harmonize the evi-
dence as to the amount of things removed from the house and
with the articles claimed to have been destroyed. It makes
no difference which place they were in when burned, in view
of the terms of the policy and the finding that respondent
*Campbell* complied with the requirement to use all reasonable
means to save and preserve the property at and after the fire.
It is quite likely that a considerable of the things removed
from the house were, on the Sunday following, stored in the
barn and shed attached thereto, and, since a watch was kept
for a considerable time after the house fire had practically
died down, that the barn and shed were reasonably thought to
be a fairly safe storage place until the following Monday.
The removal of the horse from the barn is not necessarily
fatal to that view, as the difficulty of handling such an ani-
mal in case of the barn where it is located being on fire is no-
torious. The goods, it seems, were stored mostly in the shed.
Witnesses testified that they remained at the ruins of the
house all night, and the next day until a drizzling rain set in
and they supposed there was no danger of the ruins setting
fire to anything else, and that they "helped to put a lot of
stuff which had been out all night into the shed." In the
face of the uncontroverted evidence on that subject, the evi-
dence to the effect that no such amount of property was de-
stroyed by the burning of the house as was described in the
proofs of loss, does not go very far toward impeaching such

proofs or convicting *Mrs. Campbell* of having knowingly testified falsely. The real effect of her evidence is that the goods were destroyed by the fires, not, necessarily, that they were all destroyed by the fire which burned the house.

The foregoing covers all suggestions of counsel which seem to merit special mention. We find no clearly harmful error, if error at all, in the record.

*By the Court.*—The judgment is affirmed.