KREKLOW and others, by Guardian *ad litem,* Plaintiffs and Respondents, v. MILLER, Defendant: CLASSIFIED RISK INSURANCE CORPORATION and another, Defendants and Appellants.

SCHROETTER, Plaintiff and Respondent, v. SAME, Defendant: SAME, Defendants and Appellants.

*October 31—November 28, 1967.*

For the plaintiffs-respondents Gail, Dawn, Lana, Lori and Irene Kreklow by guardian *ad litem* there was a brief by *Teper & Weiss,* attorneys, and *Arnold, Murray & O'Neill* of counsel, all of Milwaukee, and oral argument by *Daniel J. Weiss.*

For the plaintiff-respondent John Schroetter there was a brief by *Haight & Downing* of Hartland, attorneys, and *August Fabyan, Jr.,* of Pewaukee of counsel, and oral argument by *Robert W. Haight.*

For the defendant-appellant Classified Risk Insurance Corporation there were briefs by *Giffin, Simarski, Goodrich & Brennan,* attorneys, and *Edward J. Simarski* and *Alvin A. Stack* of counsel, all of Milwaukee, and oral argument by *Mr. Edward J. Simarski* and *Mr. Stack.*

For the defendant-appellant and respondent Allstate Insurance Company there were briefs and oral argument by *Walter S. Block* of Milwaukee.

CONNOR T. HANSEN, J. We will first consider the issues raised by Classified Risk Insurance Company.

Did Susan Miller make representations in applying for insurance from Classified which constituted misrepresentations as a matter of law?

Classified contends that Susan Miller made misrepresentations in her application for insurance of such a

nature that the policy issued thereon should be void as a matter of law.

Sec. 209.06 (1), Stats., provides:

"Insurance; application; effect. (1) No oral or written statement, representation or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

Under this statute, there are three grounds for avoiding a policy: (1) If the statement was false and made with intent to deceive; (2) if the statement increased the risk; or (3) if the statement contributed to the loss. *Bade v. Badger Mut. Ins. Co.* (1966), 31 Wis. 2d 38, 142 N. W. 2d 218; *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 139 N. W. 2d 48.

In the case before us, the jury made the following findings of fact: (1) Susan Miller made no false representation to Classified, (2) Susan Miller's answers in the application did not increase the risk to Classified, and (3) Susan Miller's answers in the application did not contribute to the loss resulting from the accident of October 26, 1963.

It is the well-established rule of this court that the verdict of a jury, when it is approved by the trial court, as here, will be sustained when there is credible evidence to support it. *Dickman v. Schaeffer* (1960), 10 Wis. 2d 610, 616, 103 N. W. 2d 922; *Wanserski v. State Farm Mut. Automobile Ins. Co.* (1964), 23 Wis. 2d 368, 372, 127 N. W. 2d 264.

A review of the record convinces us that there is an abundance of credible evidence to support the verdict of the jury. Both the inquiry card and the application disclose the presence of a nineteen-year-old son in the household. Admittedly it is true that the information

before Classified reflected that the son drove the 1957 Lincoln and his mother the 1953 Ford; also the record discloses that the son was buying the 1957 Lincoln and driving it at the time the application for insurance was completed and that the mother purchased the 1953 Ford about two weeks before she made the application for insurance. This case is clearly distinguishable from *Stockinger v. Central National Ins. Co.* (1964), 24 Wis. 2d 245, 128 N. W. 2d 433, for in that case there was an unequivocal statement that there was no male operator under twenty-five years of age in the insured's household when in fact there was a nineteen-year-old son operator in the household.

Furthermore, our attention has not been directed to any evidence which would support a finding that Ronald Miller had driven the Ford prior to the date of the application for insurance on March 15, 1963, and an examination of the record does not reveal any such evidence. Classified, in effect, contends that since the representations of Susan Miller were allegedly false on the date of the accident (October 26, 1963), these representations somehow relate back to the date of the application (March 15, 1963). However, sec. 209.06 (1), Stats., specifically applies to statements made in the application and not to conditions subsequent. See Vance, *Insurance* (3d ed.), pp. 399–408, sec. 70.

The question of misrepresentation was properly a jury question and in the light of all of the evidence, including the information contained in the inquiry card and the application, there was clearly sufficient credible evidence to support the findings of the jury.

Was it prejudicial error to permit opposing counsel to interrogate the Classified underwriter concerning the provisions and effect of the Classified policy?

Classified contends that it was prejudicial error to permit opposing counsel to cross-examine the Classified underwriter concerning the provisions of the Classified

policy under which Susan Miller could give her son, as a member of the household, permission to drive and thereby extend the coverage to him. It is the position of Classified that the admission of such testimony was irrelevant and prejudicial to its cause since there was no issue as to the policy provisions.

The policy was in evidence. There was also evidence as to what knowledge Classified had acquired from the inquiry card and from the application. Furthermore, the jury was entitled to know what coverage was to be afforded under the policy so that they could properly determine whether the risk, had in fact, been increased to the insurer. Classified alleges that the underwriter relied on information furnished him by Susan Miller.` Therefore, these facts, as represented by Susan Miller, would have a direct relation to his knowledge of the terms of the policy and Classified's ultimate decision to issue a policy to her, despite knowledge of all pertinent facts and policy provisions. It is also deemed significant that the jury made a finding, which we have determined was properly supported by credible evidence, that Susan Miller made no false representation to Classified.

We, therefore, determine that it was not prejudicial error to permit such interrogation of the Classified underwriter.

Did the trial court commit prejudicial error in refusing certain expert testimony and in instructing the jury in relation thereto?

Classified urges that the trial court also committed prejudicial error in refusing to admit expert testimony as to the interpretation of the application for insurance and as to customs followed by similar insurance companies and then conversely instructing the jury that they should consider whether Classified was reasonably influenced in accepting the application by comparing the same with practices of other companies.

We conclude that this contention is without merit. An automobile underwriting manager of another insurance company was called as an expert witness and was permitted to testify to the fact that the underwriting standards of Classified were similar to those of other named companies. He further testified that it was the practice of companies similar to Classified to issue policies of insurance based upon a written application of an individual.

The court did not, however, permit the witness to respond to questions of how he himself would interpret specific answers to certain questions contained in the application. The court correctly ruled that to permit such answers would, in effect, be permitting expert testimony to interpret the testimony of Classified's own witness, the documents in the record and mental processes of their witness and the other members of the underwriting staff of Classified.

"If the facts can be placed before a jury and are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as the witnesses, the opinions of experts cannot be received. The fact that the expert witness may know more of the subject and better comprehend and appreciate it than the jury is not sufficient to warrant the introduction of his testimony." Rogers, *Expert Testimony* (3d ed.), p. 51, sec. 36.

However, under certain circumstances an expert may give an opinion on an issue of ultimate fact but only on a hypothetical question. *Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. 2d 67, 76, 117 N. W. 2d 646.

Counsel for Classified then made an offer of proof which the court accepted. It is clear from the reading of the record that this offer of proof never raised the question of the usual practice of the industry under the same facts and circumstances and counsel did not further pursue the inquiry. Since there was a failure on

the part of counsel to pursue the matter, it is therefore deemed waived. *Campbell v. Germania Fire Ins. Co.* (1916), 163 Wis. 329, 158 N. W. 63.

Did the trial court commit error in not allowing Classified to call defendant, Ronald Miller, adversely?

Classified contends that the trial court committed prejudicial error in not allowing Classified to call Ronald Miller as an adverse witness.

For the purposes of this case, it is not necessary to decide whether Classified should have been permitted to call Ronald Miller adversely. They did not renew this objection in motions after verdict and therefore cannot now endeavor to predicate reversible error thereon. The rule is stated in *Wells v. Dairyland Mut. Ins. Co.* (1956), 274 Wis. 505, 518, 80 N. W. 2d 380.

"We deem the correct rule to be that no error of the court should be reviewable *as a matter of right* on appeal without first moving in the trial court for a new trial bottomed on such error, if the error is of a category that a trial court could correct by granting a new trial."

We will now consider the appeal of Allstate Insurance Company.

The trial court held that the 1955 Ford was an "additional automobile" within the terms of Allstate's policy of insurance issued to Joseph and Susan Miller and therefore within the coverage afforded by the policy, and in accord with such findings entered judgments adverse to Allstate. Allstate appeals from these judgments.

Joseph and Susan Miller (husband and wife) owned a 1957 Chrysler and a 1957 Lincoln. These cars were first insured by Allstate on January 12, 1962 and March 1, 1963, respectively, and were covered in a renewal policy that was effective from March 1, 1963 to March 1, 1964. Susan and Joseph Miller separated. She retained the 1957 Lincoln.

About March 1, 1963, Susan Miller purchased a 1953 Ford. On March 15, 1963, she insured this automobile with Classified. Ultimately, and about October 15, 1963, this car was replaced with a 1955 Ford. The accident occurred October 26, 1963. The first and only notice Allstate ever had concerning a third car was by way of a letter dated February 28, 1964, from American Family Insurance Company, insurer of the other car involved in the October 26, 1963, accident, advising Allstate of its alleged subrogation claim. Allstate responded to this letter by interviewing Susan Miller March 6, 1964, and taking a statement from her.

Neither Susan Miller, nor anyone in her behalf, ever notified Allstate in any manner whatsoever as to the acquisition of a third car.

Allstate's policy provides in part, as follows:

"*Definition of words used under this Part.*
"1. . . .
"2. *Automobiles Covered*
"(c) 'additional automobile' means an additional private passenger or utility automobile of which the named insured acquires ownership, provided notice of its delivery be given to Allstate within the policy term then current, or if delivery is within 30 days before the end of such term, then within 30 days after delivery; . . ."

It also contains the following condition on page 16:

"4. *Action Against Allstate*
"No action shall lie against Allstate until after full compliance with all the terms of this policy nor, . . ."

Counsel for both Classified and Allstate cite *Offerdahl v. Glasser* (1958), 5 Wis. 2d 498, 93 N. W. 2d 362; and *Thompson v. Dairyland Mut. Ins. Co.* (1966), 30 Wis. 2d 187, 140 N. W. 2d 200, as authority for their respective positions. We are of the opinion that neither of these cases are controlling in the matter presently before us, because in both *Offerdahl, supra,* and *Thompson, supra,* there was only one insured, having one policy, covering

one owned automobile and its replacement. We are appreciative of the difficult problem presented to the trial court and we are also cognizant of the fact that there is little case law or other authority not already alluded to by the trial court and counsel representing the respective insurance companies that is helpful in resolving this issue.

After a full review of the record and various authorities that have come to our attention, we conclude that the vehicle involved in the collision was not "an additional automobile" within the terms of the Allstate insurance contract.

Susan Miller purchased the 1953 Ford in early March of 1963 and immediately proceeded to purchase a separate and distinct policy of insurance from Classified. She notified Classified when the 1953 Ford was out of order and replaced by the 1952 Lincoln. She again notified Classified when she disposed of the 1952 Lincoln and put the 1953 Ford back into use. The 1955 Ford replaced the 1953 Ford in October of 1963, the month of the accident. She at no time, or in any manner, gave any notice to Allstate in regard to acquisition of any of these cars. It is also considered to be of significance that Susan Miller at no time gave notice to Allstate of the October 26, 1963 accident.

The subrogation letter from American Family Insurance Company, dated February 28, 1964, approximately four months after the accident, does not identify any particular vehicle, and states that it is directed to Allstate because they have been advised that Allstate was the insurance carrier for Joseph and Susan Miller. In response to this letter dated February 28, 1964, and with no knowledge of any additional automobile having been acquired by any of the Millers, Allstate interviewed Susan Miller on March 6, 1964.

Also, the Allstate policy term extended from March 1, 1963, to March 1, 1964. Except as to additional vehicles acquired during the last thirty days of the term, notice

thereof was to be given to Allstate within the policy term. If this were to be considered an additional automobile as to Allstate, its policy coverage would have commenced with the purchase of the 1953 Ford in March of 1963.

It cannot be held that either Joseph Miller or Susan Miller, the named insureds, made any attempt to in any way comply with the notice provisions of the Allstate policy. The 1955 Ford was, therefore, not an "additional automobile" under the terms of the Allstate policy.

*By the Court.*—Judgment affirmed as to Classified Risk Insurance Corporation; judgment reversed as to Allstate Insurance Company.