AUTO-OWNERS INSURANCE COMPANY, Plaintiff-Cross-Appellant,

v.

Lori Ann RASMUS and Richard P. Rasmus, Defendants-Cross-Respondents.

Ray W. CHANDLER and Mildred A. Chandler, Plaintiffs,

v.

GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant-Appellant,

AUTO-OWNERS INSURANCE COMPANY, Defendant-Respondent-Cross-Appellant,

Lori Ann RASMUS, n/k/a Lori Ann Desomer, Richard P. Rasmus, and Kathy Ann Rasmus, n/k/a Kathy Ann Davis, Defendants-Cross-Respondents,

ABC INSURANCE COMPANY, Wisconsin Physicians Service, Medicare Part B, and Donna Shalala, Secretary of the Department of Health and Human Services, a/k/a Medicare Part A, Defendants.

Court of Appeals

*No. 98–0168. Submitted on briefs September 22, 1998.—Decided October 13, 1998.*

(Also reported in 58 N.W.2d 49.)

343

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert N. Duimstra* of *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.*, of Appleton.

On behalf of the plaintiff-cross-appellant-defendant-respondent-cross-appellant, the cause was submitted on the brief of *Christine A. Gimber* of *Weld, Riley, Prenn & Ricci, S.C.*, of Eau Claire.

On behalf of defendants-cross-respondents, the cause was submitted on the brief of *William M. Gabler* of *Garvey, Anderson, Johnson, Gabler & Geraci, S.C.*, of Eau Claire.

Before Cane, C.J., Myse, P.J., and Hoover, JJ.

HOOVER, J.   General Casualty Company of Wisconsin appeals a judgment concluding that the business auto policy it issued to Richard Rasmus provided insurance coverage for a 1986 Ford Escort involved in an automobile accident and for its driver, Lori Ann Desomer. General Casualty claims that the trial court erred by concluding that Desomer was an insured, irrespective of permission, and further that the Escort was covered under its business auto policy. We affirm the judgment based on our conclusion that General Casualty provided insurance coverage under its business auto policy.[1]

This action arises out of an automobile accident in which Desomer's vehicle struck a vehicle driven by Ray Chandler and occupied by his wife, Mildred Chandler. Desomer's vehicle was a Ford Escort that her father,

---

[1] Auto-Owners Insurance Company cross appeals a judgment holding that Rasmus was not liable under § 345.15, STATS., and dismissing Desomer and her mother, Kathy Ann Rasmus, n/k/a Kathy Ann Davis, with prejudice. Our conclusion that General Casualty's business auto policy covers the accident is dispositive, and we therefore need not address Auto-Owner's arguments on cross-appeal. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

Rasmus, had purchased for her several days before the accident. It is undisputed that Desomer, a minor, did not have permission to drive the vehicle on the day of the collision.

As a result of the accident, two separate lawsuits were initiated and later consolidated. The Chandlers filed a personal injury action against Desomer; her mother (Davis); Rasmus, and his insurer (General Casualty Company); the Chandlers' insurer (Auto Owners); Wisconsin Physicians Service; and Donna Shalala. In a second action, Auto-Owners, the Chandler's subrogated uninsured carrier, sued Desomer, Rasmus and Davis.

General Casualty subsequently brought a motion for summary judgment alleging that it did not provide insurance coverage for the accident and therefore had no duty to defend or indemnify Rasmus and/or Desomer under either its business or personal automobile policy. General Casualty claimed that the Escort was not a covered "auto" and that Desomer was not "an insured" because she did not have permission to drive the vehicle. The trial court denied General Casualty's motion, concluding that General Casualty's business auto policy covered the accident because it included family members as insureds regardless of permission, and the Escort was a covered auto under the policy's "automatic insurance" clause. *See Offerdahl v. Glasser*, 5 Wis. 2d 498, 93 N.W.2d 362 (1958). The court further held that the personal auto policy required permission and issues of fact existed whether Desomer had permission to drive the Escort.

In September 1997, the parties entered into a stipulation and order for partial dismissal. Auto Owners and General Casualty agreed to pay $40,250 each, for a total of $80,500, to settle the Chandlers' claims. The

parties further agreed that the only remaining litigants would be Auto-Owners, Desomer, Davis, Rasmus and General Casualty. It was understood that General Casualty and Auto-Owners would appeal the coverage issue. If General Casualty was found to provide coverage, it would then reimburse Auto-Owners $40,250. If General Casualty was not liable, then Auto-Owners would be responsible for the $40,250 it paid under the settlement agreement.

A bench trial was held in October 1997. The trial court found, in pertinent part, that Desomer did not have implied or express permission to drive the Escort. From this it concluded that General Casualty's personal auto policy did not provide coverage. The trial court ordered that Rasmus and the Estate of Richard P. Rasmus,[2] Desomer and Davis be dismissed with prejudice.[3] The court further ordered that Auto-Owners recover a judgment against General Casualty in the amount of $47,864.00, including the $40,250 Auto-Owners paid under the settlement with the Chandlers and $7,614 as reimbursement for property damage Auto Owners paid. General Casualty appeals the trial court's denial of summary judgment and, specifically, its conclusion that General Casualty's business auto policy provided liability coverage for Desomer and the Escort.

---

[2] The Estate of Richard P. Rasmus was brought into the action due to his death while the lawsuit was pending.

[3] Auto-Owners claims that the trial court erroneously decided to dismiss Desomer and Davis from the lawsuit based upon its misinterpretation of the settlement agreement entered on September 10, 1997. Because we conclude that General Casualty's policy covers the loss, we will not address this issue on appeal. *See Sweet*, 113 Wis. 2d at 67, 334 N.W.2d at 562.

■ We review a trial court's decision to grant summary judgment de novo, as a question of law. *M & I First Nat'l Bank v. Episcopal Homes Mgmt.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175, 182 (Ct. App. 1995). In making this determination, we apply the same methodology as the trial court. *Id.* at 496, 536 N.W.2d at 182. Because summary judgment methodology is well known, we need not repeat it "except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 497, 536 N.W.2d at 182 (citing § 802.08(2), Stats.). Summary judgment may be used to address insurance policy coverage issues. *Link v. General Cas. Co.*, 185 Wis. 2d 394, 398, 518 N.W.2d 261, 262 (Ct. App. 1994). In this case, the parties stipulated to the material facts, but disagree on the interpretation of the insurance policy General Casualty issued to Rasmus and his business, Rick's Trucking and Bobcat Service. Therefore, we may properly decide this case on summary judgment. *See id.*

■ The interpretation of an insurance policy is a question of law this court reviews de novo, and we apply the same rules of construction that we apply to contracts generally. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990). In interpreting the policy, our objective is to determine the parties' true intentions. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). We must give an insurance policy's language its common and ordinary meaning; moreover, we construe the language as would a reasonable person in the position of the insured. *Cieslewicz v. Mutual*

*Serv. Cas. Ins. Co.*, 84 Wis. 2d 91, 97–98, 267 N.W.2d 595, 598 (1978).

An insurance policy is ambiguous if the language when read in context is fairly or reasonably susceptible to more than one construction. *See Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 536–37, 514 N.W.2d 1, 6 (1994). We resolve ambiguities in an insurance policy against the insurer and in favor of the insured. *See Garriguenc v. Love*, 67 Wis. 2d 130, 135, 226 N.W.2d 414, 417 (1975). Whether ambiguities exist is a question of law. *See Western Cas. & Surety Co. v. Budrus*, 112 Wis. 2d 348, 351, 332 N.W.2d 837, 839 (Ct. App. 1983).

When no ambiguities exist and the policy's terms are plain on their face, we will not rewrite the policy by construction. *Limpert v. Smith*, 56 Wis. 2d 632, 640, 203 N.W.2d 29, 33–34 (1973). Rather, we will apply the policy terms. *See Budrus*, 112 Wis. 2d at 351, 332 N.W.2d at 839. While provisions, conditions, and exceptions tending to limit liability are strictly construed against the insurer, we "will not, under the guise of strict construction . . . rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Bankert v. Threshermen's Mut. Ins Co.*, 105 Wis. 2d 438, 444–45, 313 N.W.2d 854, 857 (Ct. App. 1981).

General Casualty's business auto policy provides that it will "pay all sums an '*insured*' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a *covered 'auto.'* " (Emphasis added.) General Casualty asserts that Desomer is not an

"insured" under its policy and, further, that the Escort is not a covered "auto."

We first address whether Desomer is an "insured." The policy in question defines an insured as, "a. You for any covered 'auto.' b. *Anyone else* while using with your *permission* a covered 'auto' you own, hire or borrow. . ." (Emphasis added.) The policy, however, also contains an endorsement, which reads:

> a. The following is added to WHO IS AN INSURED:
>
> "Family members" are "insureds" for any covered "auto" you own of the "private passenger type" and any other "auto" described in paragraph **2.b.** of this endorsement.

Family members are defined in the endorsement as, "a person related to you by blood, marriage or adoption who is a resident of your household,[4] including a ward or a foster child." The policy further contains an endorsement entitled "Wisconsin Changes," (WC endorsement) which adds to the definition of insured: "Anyone else is an 'insured' while using a covered 'auto' you own with your or any adult 'family member's' permission."

■

General Casualty claims that Desomer is not an insured because the policy required that she have permission to drive the Escort. We disagree. The policy's language is clear and unambiguous; permission is not a prerequisite for a family member to be an insured.

---

[4]Although Desomer resided back and forth between her father, grandmother and mother, the parties do not challenge that Desomer was a "family member" under the policy; therefore, we will not address this issue on appeal. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992).

General Casualty's policy originally defined an insured as "you" and "Anyone else while using with your permission . . . ." If this was the sole definition, we would agree that the policy required permission in order for Desomer to be included as an insured. The endorsement, however, *added* "Family member[s]" to the definition of an insured. The plain language of the endorsement reads that "family members are insured." This language does not require that a family member have permission.

General Casualty suggests that the WC endorsement in effect trumps the endorsement providing coverage to family members because the *"Anyone else"* who is covered where the use was permissive includes family members. (Emphasis added.) This position is contrary to the WC endorsement's unambiguous language that "Anyone else" refers to third parties, who are not the policyholder, or, under the family member endorsement, a family member. The WC endorsement not only does not state that the definition of "Anyone else" includes family members, but indeed, its separate reference to family members[5] belies the soundness of General Casualty's interpretation. Moreover, were we to accept General Casualty's interpretation, we would be placing the two endorsements in conflict. We must, however, interpret insurance policies so all parts are given meaning. *Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 154, 539 N.W.2d 883, 886 (1995). Harmonizing the policy and the endorsements, we conclude that "an

---

[5] The WC endorsement states: *"Anyone else* is an 'insured' while using a covered 'auto' you own with your or any adult *'family member's'* permission." (Emphasis added.) Note that by placing the term family members in quotes, General Casualty is incorporating the policy's definition for that term into *both* endorsements.

insured" includes: (1) the policy holder for any covered "auto," (2) family members, and (3) anyone else while using a covered "auto" with the policyholder's or adult family member's permission. Thus, we conclude that Desomer, as a family member, was an insured under the policy and did not need permission to drive the vehicle to be included as an insured.

Alternatively, even if the definitions of an insured in the endorsements, when considered together, created an ambiguity in the insurance policy, we would still conclude that a family member does not need permission to be included as an insured. When an insurance policy is ambiguous, i.e., fairly or reasonably susceptible to more than one construction, we must resolve the ambiguity in favor of coverage. *Garriguenc*, 67 Wis. 2d at 135, 226 N.W.2d at 417. If it was unclear whether the endorsement's addition of a family member as an insured required permission, we would have to resolve the uncertainty in favor of Desomer and conclude that permission was not required and that she was therefore an insured under the policy.

General Casualty next argues that the Escort was not a covered "auto" under its business auto policy. Rasmus' business auto policy defines a covered "auto" as:

> SPECIFICALLY DESCRIBED "AUTOS." Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM THREE).

Autos acquired after the policy begins will also be covered if:

352

**a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

General Casualty argues that because Rasmus did not notify it that he wanted coverage for the Escort within thirty days after he purchased the vehicle, it was not a covered "auto" under the policy.

General Casualty's contention is contrary to the holding in *Offerdahl*, a case that is directly on point. In *Offerdahl*, an insurance policy was issued to Glasser on December 1, 1954, covering a Ford automobile. *Id.* at 499–500; 93 N.W.2d at 362. On October 30, 1955, Glasser purchased a Chevrolet, but did not immediately notify his insurance company that he acquired the new vehicle. *Id.* at 500; 93 N.W.2d at 363. Glasser's insurance policy contained a provision under which newly acquired automobiles were covered if Glasser gave notice within thirty days following the date of delivery. *Id.* On November 29, 1955, Glasser was in an automobile accident with the Chevrolet. *Id.* at 499; 93 N.W.2d at 362.

The issue in *Offerdahl* was whether the policy's thirty-day "automatic insurance" clause provided coverage, regardless of notice. The supreme court held that the policy provisions automatically afforded insurance coverage until the end of the thirty-day period, regardless whether notice had been given before the accident. *Id.* at 501–02; 93 N.W.2d at 363–64. *Offerdahl* followed the majority rule:

> "Where the 'automatic insurance' clause requires notice of the acquisition of a new automobile to be given the insurer within a specified time

after delivery, a failure to give notice prior to an accident occurring after the expiration of the designated period precludes coverage of the new automobile. However, where the accident takes place within the notice period but before any notice has been given, it is generally held that the requirement of notice is a condition subsequent rather than a condition precedent and that such coverage is automatically effected upon delivery of the new automobile and remains in effect until the end of the specified period, irrespective of whether notice has been given." 5A Am.Jur., Automobile Insurance, p. 83, sec. 84.

*Id.* at 500–01, 93 N.W.2d at 363.

General Casualty attempts to distinguish this case from *Offerdahl* based on *Thompson v. Dairyland Mut. Ins. Co.*, 30 Wis. 2d 187, 140 N.W.2d 200 (1966), and *Kreklow v. Miller*, 37 Wis. 2d 12, 154 N.W.2d 243 (1967). Neither case accomplishes the purpose. In *Thompson*, the court concluded that there was no coverage because the accident occurred after the expiration of the automatic insurance provision, *id.* at 192, 140 Wis. 2d at 203, and in *Kreklow*, the court held that *Offerdahl* did not apply because the insured's most recently acquired vehicle was covered by a different insurance company, where *Offerdahl* only involved "one insured, having one policy, covering one owned automobile and its replacement." *Kreklow*, 37 Wis. 2d at 24–25, 154 N.W.2d at 249.

We conclude that the Escort was a covered "auto" under General Casualty's policy. Here, as in *Offerdahl*, General Casualty's business auto policy contained a thirty-day automatic insurance clause. Rasmus purchased a new vehicle without giving notice to his

insurance company.[6] Several days after he purchased the vehicle, his daughter got into an accident. Following *Offerdahl*, General Casualty's policy covered the Escort for any accident occurring in the thirty-day time period, regardless of notice. If the accident had transpired thirty days after the automatic insurance period, then the Escort would not have been covered.

*By the Court.*—Judgment affirmed.

[6] Although General Casualty argues that coverage should not be afforded because Rasmus did not intend to insure the vehicle through General Casualty, we conclude that this is irrelevant under the *Offerdahl* analysis. *See Offerdahl v. Glasser*, 5 Wis. 2d 498, 93 N.W.2d 362 (1958).