OLGUIN, Respondent, v. ALLSTATE INSURANCE COMPANY, a foreign corporation, Appellant.

*No. 143 (1974). Submitted on briefs January 7, 1976.—Decided February 3, 1976.*
(Also reported in 237 N. W. 2d 694.)

For the appellant there was a brief by *Blazek & Hale* of Milwaukee.

For the respondent there was a brief by *Donald F. Konle* of Milwaukee.

WILKIE, C. J. This appeal concerns a fire loss by Eudoro Olguin, plaintiff-respondent, and the extent of coverage under a renter's insurance policy issued to him by Allstate Insurance Company, the defendant-appellant.

The plaintiff was employed as a mechanical engineer at Grafton, Wisconsin, and resided at 2535 North Prospect avenue in Milwaukee. In March of 1971 he pur-

chased a renter's policy from Allstate. This policy provided, in part, as follows:

"UNSCHEDULED PERSONAL PROPERTY

"Coverage C

"1. *On Premises:* This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling, owned, worn or used by an Insured, while on the premises, . . .

"2. *Away From Premises:* This policy also covers unscheduled personal property as described and limited, while elsewhere than on the premises, anywhere in the world, owned, worn or used by an Insured, . . .

"The limit of Allstate's liability for such property while away from premises shall be an additional amount of insurance equal to 10% of the amount specified for Coverage C, but in no event less than $1,000."

The limit of liability under Coverage C, Unscheduled Personal Property, was $10,000. In a separate section entitled "Extensions of Coverage," the policy read as follows:

"5. *Automatic Removal Permit:* When, during the policy period, the Named Insured removes unscheduled personal property covered under Coverage C from the described premises to another location within the limits of that part of Continental North America included within the United States of America, and the state of Hawaii, occupied as his principal residence, so much of the limit of insurance provided for Coverage C shall apply at the new location, in transit, and at the described location as the value at the new location, in transit, or at the described location, bears to the total value of such property at all locations. In no event, however, shall recovery under this extension be less than would have been available under the limit of insurance for Coverage C2 (Away From Premises).

"When the removal is completed, the new location shall be considered the described premises as to Coverages C and D, and the former location shall cease to be the described premises."

On or about April 10th Olguin resigned his Wisconsin employment. He packed four boxes of personal property and crated a motorcycle. These were all taken to the Lifschultz Fast Freight company and arrangements were made there to have them shipped to the Andesco Export Corporation in New York City. Olguin knew one Schweitzer there. On April 15th Olguin and his wife left their Milwaukee apartment. Olguin's wife went to live with a sister in the city, and Olguin left for New York City. When he arrived in New York City he made certain business contacts, as he had done in the past during his business trips there. He also telephoned a few places in New York City to inquire about renting an apartment, but did not visit any place in person. After a day or two in New York, Olguin received a call from a European business associate, left New York for Madrid, and remained in Europe for the next two months.

On April 19th Olguin's four boxes and motorcycle were destroyed in transit to New York City, apparently due to a fire at a railroad siding in New Jersey. When Olguin returned to the United States, he went to Milwaukee and established another residence there. He never established a residence in New York City.

The loss amounted to a total of $15,596.75, not including the value of the motorcycle which was not covered by the policy. The high value of the property was attributable to the presence of a small library of specialized engineering books, a gun collection, an extensive wardrobe of clothes, and a number of valuable decorative pieces which Olguin had bought during his travels in various parts of the world.

The central dispute here is whether there is Schedule C coverage under the Allstate policy to the limit of the policy ($10,000) under the automatic removal permit provision of the policy. We hold differently than the trial court which ruled, after a full trial, that the automatic removal permit provision in the policy (which provided

for pro rata coverage when the insured removed personal property from the described premises "to another location [within the continental United States and Hawaii] occupied as his principal residence") gave coverage here because Olguin *intended* to establish a new residence in New York City but was prevented from doing so by the fire loss to his property. We think that the policy clearly provided coverage only if property had been or was in the process of being moved from one location to another occupied as a residence, and that the facts here clearly show that Olguin was not in the process of moving his property to a New York City location occupied as his residence.

I. *Construction of the Automatic Removal Permit Provision of the Allstate Policy.*

The provisions of an insurance contract are to be construed according to well-settled principles set forth in the recent case of *Garriguenc v. Love,*[1] as follows:

"Contracts of insurance are controlled by the same principles of law that are applicable to other contracts. A policy of insurance like any other contract is to be construed so as to give effect to the intention of the parties. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean. Whatever ambiguity exists in a contract of insurance is resolved in favor of the insured. This is a restatement of the general rule that ambiguous contracts are to be construed most strongly against the maker or drafter. Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction. However, when the terms of a policy are plain on their face, the policy should not be rewritten by construction to bind the insurer to a risk it was un-

---

[1] (1975), 67 Wis. 2d 130, 134, 135, 226 N. W. 2d 414.

willing to cover, and for which it was not paid. Litigants should not be able to resort to rules of construction for the purpose of modifying the contract or creating a new contract; and a court need not resort to either construction or case law to bolster its recognition of that plain meaning."

Also relevant to the case at bar is the further principle that insurance policies should be given a reasonable interpretation and not one which leads to an absurd result.[2]

By its "Automatic Removal Permit" Allstate granted to the insured an extension of its regular "On Premises" coverage. But this was a limited extension. It did not extend to every removal of the insured's personal property away from the described premises since this type of general removal was already covered by the "Away From Premises" clause of Coverage C. The intention of the parties in providing for the pro rata coverage of the "Automatic Removal Permit" is plain and clear. Any reasonable person in the position of the insured would have understood the words "to another location . . . occupied as his principal residence" to refer to the situation where an insured is moving from the described premises to another definite location which already is or will be, after the arrival of the personal property, occupied as his new residence. This meaning of these words is not ambiguous, and thus it is not necessary to resort to rules of construction for ambiguous contracts. To extend the obvious meaning of these words beyond the situation where an insured sends his personal property to a new location which already is or will be, after the arrival of the property, occupied as his new residence would be to bind the insurer to a risk he did not contemplate and for which he was not paid.

---

[2] *McPhee v. American Motorists Ins. Co.* (1973), 57 Wis. 2d 669, 205 N. W. 2d 152.

## II. *Application of the Construed Permit to the Facts of this Case.*

The trial court ruled that Olguin came within the coverage of the "Automatic Removal Permit" because he intended to establish a new residence in New York City, but was prevented from doing so by the loss of his property. However, the contract languages makes it clear that the insured's intent to establish a new residence in a certain geographical area is irrelevant. What is necessary to come within this pro rata coverage is to remove one's personal property from his old residence to a new location already occupied or which one has a right to occupy as his principal residence.

Here it is undisputed that Olguin did not ship his property to a new residential location, but, on the contrary, shipped it to a New York City export company for safekeeping until he decided what to do with it after that. Indeed, the trial court specifically found that the property was to be delivered to Andesco "for safekeeping." Olguin testified at the trial that Andesco was to "take care of" the boxes for him, and put them somewhere "for safekeeping." The evidence reveals that the boxes would either have been shipped overseas or would have been kept in Andesco's custody so that Olguin could have selected items as he needed them, or would have eventually ended up in a New York City apartment. However, the future destination of these boxes was dependent upon Olguin's further intervention, and it is clear that, when they were shipped from Milwaukee, they were not on their way to a New York City location which Olguin occupied as his principal residence. It would be completely unjustifiable to conclude that these boxes were on their way to Olguin's new principal residence in New York City simply because Olguin made a few phone calls for apartments while in New York City for one day.

Olguin argues (and the trial court found) that Olguin was prevented from establishing a residence in New York

City because the loss of his property made it inexpedient to do so. However, according to the undisputed chronology of events, Olguin abandoned his brief attempts to find a New York residence on or about April 15th, not because his property was lost (this did not occur until April 19th), but because a business opportunity in Europe came up and he decided to go there. More importantly, it is the fact of where the property was destined for when it was sent from Milwaukee which is controlling in this case, and not what Olguin would have done at some later date, but for the loss. Andesco Export Corporation was the destination, and this was not a station on the way to a definite residential location but a place of storage, where the property was to remain pending Olguin's further instructions. Because Allstate was not willing to cover the risk of safekeeping and storage under its "Automatic Removal Permit," it must be held that Olguin is not entitled to this pro rata coverage.

III. *"Away From Premises" Coverage.*

The insured does not in this case forfeit all coverage because the property was not in the process of removal from one principal residence to another. The "Away From Premises" clause of Coverage C applies to the insured's personal property "while elsewhere than on the premises, anywhere in the world," and so is available in regard to this loss. This clause provides for a limit of liability "equal to 10 percent of the amount specified for Coverage C, but in no event less than $1,000." Here the amount specified for Coverage C was $10,000, so that the limit of liability for "Away From Premises" coverage is $1,000. The "Loss Deductible Clause" of the policy provides that there is a deductible only if so indicated on the declaration page, and the declaration page of Olguin's policy has the word "None" after "Loss Deductible(s) Applicable," so that there is no deductible in this case.

Thus, Olguin is entitled to $1,000 under the "Away From Premises" coverage of his policy.

IV. *Pre-Judgment Interest.*

Olguin is entitled to pre-judgment interest on this $1,000 recovery. The oft-stated rule in regard to pre-judgment interest is that it is proper when there is "reasonably certain standard of measurement by the correct application of which one can ascertain the amount he owes."[3] When the amount owed is readily determinable, the withholding party "should equally be held responsible for making such application correctly and liable for interest if he does not."[4]

We conclude that, although Olguin's claim under the automatic removal permit must be denied, he did state a proper claim under the "Away From Premises" coverage. Since this amount was readily determinable, he is entitled to interest on the part of his claim which is certain and which is established under this provision of the policy. However, this interest should run only from August 2, 1971 (when the sixty-day period from the June 2d proof of loss expired) until June 11, 1973 (the date when the company made a formal offer of judgment in the amount of $1,000).

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion. Costs to appellant.

---

[3] *Laycock v. Parker* (1899), 103 Wis. 161, 186, 79 N. W. 327. See also: *Wyandotte Chemicals Corp. v. Royal Electric Mfg.* (1975), 66 Wis. 2d 577, 225 N. W. 2d 648; *Dahl v. Housing Authority of the City of Madison* (1972), 54 Wis. 2d 22, 194 N. W. 2d 618.

[4] *Laycock v. Parker, supra,* footnote 3.