**James Louis WIESMUELLER and August Wiesmueller, Plaintiffs-Appellants,**

v.

**INTERSTATE FIRE & CASUALTY COMPANY, an Illinois Insurance Corporation, Defendant-Appellee.**

No. 77–1057.

United States Court of Appeals, Seventh Circuit.

Argued October 5, 1977.

Decided Jan. 5, 1978.

---

Kevin M. O'Donnell, Milwaukee, Wis., for plaintiffs-appellants.

James P. O'Neill, Milwaukee, Wis., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, SWYGERT and SPRECHER, Circuit Judges.

CASTLE, Senior Circuit Judge.

We are presented with a dispute stemming from conflicting constructions of an aviation liability insurance policy. Defendant insurance company construes the contract of insurance as limiting personal injury recovery to $100,000 per passenger while plaintiffs contend that the policy should be read to limit recoveries by all injured passengers to $300,000. Since we agree with the district court that the defendant's construction of the insurance policy is correct under the applicable principles of law, we affirm.

## I. *Preliminary Matters*

The facts are not in dispute and can be stated briefly. On August 26, 1967, plaintiff James Louis Wiesmueller (James), then a minor, was injured seriously in the crash of a four seat airplane (three passenger seats and one pilot seat). James was the only passenger and the pilot was killed. The airplane was owned by the West Allis Flying Club and Kenosha Aviation Service, Inc. and was insured by the defendant Interstate Fire & Casualty Company (Interstate). James and his father, August Wiesmueller, instituted a personal injury action in the Circuit Court of Waukesha County, Wisconsin against the estate of the pilot. The state action resulted in a judgment for James of $313,500 and a judgment for his father of $24,124.55 for medical bills. As insurer of the pilot, Interstate paid $100,000 and costs into court but denied liability for any amount over $100,000. Plaintiffs then sued Interstate in the United States District Court for an additional $200,000. The parties stipulated to these facts below and both sides moved the district court for summary judgment. The district court denied plaintiffs' motion for summary judgment and dismissed the complaint. Plaintiffs brought this appeal.

 The construction of this insurance policy is a question of law, *Westerman v. Richardson*, 43 Wis.2d 587, 591, 168 N.W.2d 851, 853 (1969), and, therefore, it is proper for this court to conduct an independent review of the construction adopted below.[1] We note at the outset that Wisconsin has followed several general principles in construing insurance contracts:

Contracts of insurance are controlled by the same principles of law that are applicable to other contracts. A policy of insurance like any other contract is to be construed so as to give effect to the intention of the parties. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean. Whatever ambiguity exists in a contract of insurance is resolved in favor of the insured. This is a restatement of the general rule that ambiguous contracts are to be construed most strongly against the maker or drafter. Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction. However, when the terms of a policy are plain on their face, the policy should not be rewritten by construction to bind the insurer to a risk it was unwilling to cover, and for which it was not paid. Litigants should not be able to resort to rules of construction for the purpose of modifying the contract or creating a new contract; and a court need not resort to either construction or case law to bolster its recognition of that plain meaning.

*Garriguenc v. Love*, 67 Wis.2d 130, 134–35, 226 N.W.2d 414, 417 (1975) (footnotes omitted). *See also Olguin v. Allstate Insurance Co.*, 71 Wis.2d 160, 237 N.W.2d 694 (1976); *McPhee v. American Motorists Insurance Co.*, 57 Wis.2d 669, 205 N.W.2d 152 (1973).

Relying upon certain of these principles of contract interpretation, plaintiffs construe the aviation policy as establishing a $300,000 limit on personal injury recovery

---

1. The parties agree that the insurance policy should be interpreted in accordance with Wisconsin law.

for all passengers on the ill-fated airplane. Their theory is that the policy provides a formula for computing the recovery limit for injuries to passengers which is based upon the number of passenger seats in the aircraft. The total recovery limit for all passenger injuries, they contend, is equal to $100,000 multiplied by the number of passenger seats in the plane (here $100,000 $\times$ 3 passenger seats = $300,000). To support their claim to recovery of an additional $200,000, plaintiffs argue first that certain contract language and the interrelationship of various sections of the document show that the suggested formula for determining passenger recovery was intended by the contracting parties.[2] Second, plaintiffs contend that even if the policy does not clearly set a $300,000 limit on passenger recovery in the instant case, the insurance contract is ambiguous and this ambiguity should be resolved in favor of the plaintiffs.

## II. *Construction of the Contract*

In essence, plaintiffs' first argument is a suggested construction of the contract which supports their theory and weakens the contention of the defendant. Initially, the plaintiffs contend that defendant's $100,000 individual limit is wrong because it requires that the contract be considered a double limit policy. Plaintiffs argue that the policy cannot be read to provide a double limit since the liability limits were intentionally included in section D of "Item 8" which is entitled "*Single Limit* Bodily Injury and Property Damage Liability." *See* note 2 *supra* (emphasis added). Plaintiffs conclude the use of the single limit section shows that the parties did not intend to subject each passenger to a separate recovery limit which, they claim, is "the fundamental characteristic of a double limit policy." Although it is unnecessary to jour-

---

2. Plaintiffs rely primarily upon "Item 8" of the policy Declarations and Endorsement # 1, reproduced here for convenience.

ITEM 8

The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the Insurer's liability against each such coverage shall be as stated herein, subject to all the terms of the Policy having reference thereto.

COVERAGES (As described in the Insuring Agreements).

| | | Limits of Liability | |
|---|---|---|---|
| A | Bodily Injury Liability excluding Passengers | $ ___ each person / $ ___ each occurrence | |
| B | Property Damage Liability | $ ___ each occurrence | . |
| C | Passenger Bodily Injury Liability | $ ___ each person / $ ___ each occurrence | |
| Single Limit Bou..y Inju.., and Property Damage Liability | D Including Passenger Bodily Injury | $ 500,000.00* | *Passenger Liability .Limited to $100,000.00 each passenger seat. |
| | E Excluding Passenger Bodily Injury | $ ___ each occurrence or accident | |
| F | Medical Payments—Pilot ___cluded | $ ___ each person | |
| | | $ ___ each accident | |
| | | Total Premium | $ 1,358.00 |

DESCRIPTION OF AIRCRAFT

| Identification Marks. | Category. | Year built, Make, Model Serial No. | Type* | Engine H.P., Make, Model. | Declared maximum number of passengers (excluding crew) to be carried at any one time. |
|---|---|---|---|---|---|
| | | SEE ENDORSEMENT #1 | | | |
| | | | | | |
| | | | | | |

*Landplane, seaplane, skiplane, amphibian or rotorcraft.

ENDORSEMENT #1

In consideration of the premium charged, it is hereby understood and agreed that Forms Aviation 16 and 20, Item #8, Description of Aircraft and Amount of Insurance shall read as follows:

1. DESCRIPTION OF AIRCRAFT

| | | | F.A.A. NUMBER | PASS. CAP. | YEAR |
|---|---|---|---|---|---|
| A. | Cessna 150 E | Landplane | N-3007-J | One | 1965 |
| B. | Cessna 150 Comm. | Landplane | N-8704-S | One | 1965 |
| C. | Mooney | Landplane | N-6828-U | Three | 1963 |
| D. | Cessna Skyhawk | Landplane | N-6078-R | Three | 1966 |
| E. | Cessna 150 Comm. | Landplane | N-7801-F | One | 1966 |
| F. | Mooney | Landplane | N-9276-M | Three | 1966 |

* * *

ney through the labyrinth of insurance concepts where the parties' intent is clear from the face of the policy, we note that the defendant's reading of the contract does not require the "classic" double limit concept plaintiffs suggest. Rather, there is one limit of $100,000 for each *and every* passenger up to the passenger capacity. There is no second "per occurrence" limit, which sets the maximum amount to be recovered if two or more passengers are injured, as appears in the classic double limit policy.[3]

Essentially, the limit of liability section in this policy creates two separate limits. The first is a $500,000 maximum on the three types of liability covered: (1) passenger bodily injury; (2) non-passenger bodily injury (*e.g.* persons on the ground); and (3) the destruction of property caused by the mishap. The second limit is a specific portion of that $500,000 allocated to passenger injury coverage alone. The parties differ only as to the form of the second limit.[4]

■ Plaintiffs contend the language of the policy shows that the parties intended the second limit to be $300,000 for all injured passengers. Plaintiffs point specifically to the sentence bearing the asterisk in the margin of section D, *supra* note 2: " *Passenger Liability Limited to $100,-000.00 each passenger seat." Plaintiffs argue that the parties could have clearly specified the per passenger limit without the use of the final word "seat." Therefore, that word must mean the parties intended that there be an aggregation of the $100,-000 allotted each seat giving a total of $300,000. Also, plaintiffs argue that the only use for the passenger capacity data provided in Endorsement # 1, *supra* note 2,

is to provide the multiplier to establish a $300,000 passenger injury limit in this case. Defendant's interpretation of the contract, according to plaintiffs, improperly ignores both of these provisions:

> Some meaning must be given to each sentence, phrase, and word used, and when this may be fairly and properly done, no part of the language used can be rejected as superfluous or unmeaning. This is an important and familiar rule of construction.

*Rabinovitz v. Travelers Insurance Co.*, 11 Wis.2d 545, 552, 105 N.W.2d 807, 811 (1960).

■ We do not agree that construing the insurance contract to show the parties intended a $100,000 per passenger liability limit ignores the language referred to by plaintiffs. Regarding the passenger capacities listed in Endorsement # 1, the insurance premiums are based upon the number of seats in the airplane which, as plaintiffs note, allows other planes to be added to the coverage without rewriting the basic policy. The passenger capacity data is also referred to in Exclusion (4) of the liability policy which states that the insurance policy does not apply if the total number of persons in the aircraft at the time of the loss exceeds the maximum capacity. Thus, the listing of passenger capacities is not being ignored by the defendant's interpretation. Rather, that language simply is not read to have the key computational role it is accorded under plaintiffs' construction.

Also, the word "seat" is not being ignored. While the word is not absolutely necessary to convey the intended meaning, the defendant's contention does not require that the word be "rejected as superfluous or

**3.** Since we agree with plaintiff to the extent that this is not a classic double limit policy, we do not consider it necessary to discuss *Safeco Ins. Co. of America v. McManemy*, 72 Wash.2d 211, 432 P.2d 537 (1967) or *North Gate Corp. v. National Food Stores*, 30 Wis.2d 317, 140 N.W.2d 744 (1966). However, we note the thrust of the *Safeco* opinion was to enforce the policy as it commonly would be read and to avoid intricate interpretations.

**4.** Although the second limit is included in the single limit of $500,000 and, thus, is within the

single limit section of "Item 8," we do not feel this automatically makes the second limit a single limit of $300,000. It is consistent with the language of the form contract to read the sentence in the margin of section D, *supra* note 2 as allocating $100,000 of the $500,000 single limit to each passenger. While such an apportionment may have one characteristic of the "classic" double limit approach, that fact does not make this interpretation of the separate limit structure inconsistent with the language of the form.

unmeaning." The clause in section D merely states that each passenger seat will be accorded $100,000 of insurance. The clause does not explicitly or implicitly state that the "$100,000 each passenger seat" is to be aggregated to create a $300,000 fund for any injured passenger in a three seat plane. Therefore, while the same meaning could have been expressed without using the word "seat" in the clause, we cannot reach the conclusion that the parties must have intended plaintiffs' complex formula on the basis of one word verbosity.

Plaintiffs' final argument concerning the construction of the contract is that the defendant's interpretation causes anomalies within the policy. However, once recognizing that the double limit/single limit dichotomy is not relevant to the present case, the anomalies which plaintiffs claim exist are resolved. First, plaintiffs cite *Bulman v. Bulman*, 271 Wis. 286, 73 N.W.2d 599 (1955), which held that the limits of liability language in a double limit automobile liability policy authorized payment of derivative medical claims only from the per injury limit and not from the per occurrence limit. Plaintiffs argue by analogy that if the defendant is allowed to present a dual limit policy through section D, *supra* note 2, the applicable limits of liability language would not confine payment of the medical payments claim of August Wiesmueller to the per passenger limit.[5] However, since the $100,000 maximum per injured passenger is a separate limit on a separate coverage, it follows that all claims deriving from that particular coverage must be collected out of the $100,000 limit.[6]

Secondly, since there are separate limits, there is no inconsistency in defendant's version between the typewritten "per passenger" limit and the "per occurrence" language in the Insuring Agreements.[7] The two can be easily read as consistent with each other: there is a total per occurrence limit for all three coverages (passenger bodily injury, nonpassenger bodily injury, and property damage) with a separate per passenger limit carved out of the total for passenger bodily injuries.

Having found plaintiffs' arguments to be unpersuasive, we agree with the district court that the parties intended the policy to establish a $100,000 per passenger limit. To hold otherwise, as noted below, would make the amount an injured passenger could recover entirely dependent upon whether the person was injured in a three-seat plane rather than a one-seat plane. Such absolute fortuity would violate the settled rule that "insurance policies should be given a reasonable interpretation and not one which leads to an absurd result." *Olguin v. Allstate Insurance Co., supra*, 71 Wis.2d at 165, 237 N.W.2d at 697 (footnote omitted); *McPhee v. American Motorists Insurance Co., supra*. We believe that a reasonable person in the position of an insured would

---

**5.** In the present case, the applicable portion of the "Limits of Liability" section of the policy states only "The limit of liability stated in the Declarations for Coverages D and E is the limit of the Insurer's liability for all damages arising out of any one occurrence." The plaintiffs contrast this with the corresponding language relating to the double limit section which specifically states that the "per person" liability is limited to "the Insurer's liability for all damages arising out of bodily injury, sickness or disease, including death . . . .."

**6.** Thus, *Bulman v. Bulman, supra,* is distinguishable since that case involved a question of whether a derivative claim should be satisfied from the per injury rather than the per occurrence limit. Here, there is no per occurrence limit, as that term is used in the "classic" double limit policy, on passenger injuries. In this case, there is only a per injury limit.

**7.** INSURING AGREEMENTS

I.

\* \* \* \* \* \*

COVERAGE D—SINGLE LIMIT—BODILY INJURY (INCLUDING PASSENGERS) AND PROPERTY DAMAGE LIABILITY.

To pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, and for damages because of injury to or destruction of property, including loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.

have understood the defendant's liability to be limited to $100,000 for each injured passenger. *Garriguenc v. Love, supra.*

### III. *Ambiguity of the Contract*

■ Plaintiffs argue that even if the policy does not clearly show the parties intended to set a $300,000 limit on all recoveries for passenger injuries, the insurance contract is ambiguous and that "[w]hatever ambiguity exists in a contract of insurance is resolved in favor of the insured." *Garriguenc v. Love, supra,* 67 Wis.2d at 135, 226 N.W.2d at 417. If the contract in this case were ambiguous, we would agree with plaintiffs' argument. However, merely being able to conjure up a remotely possible second interpretation is not sufficient to invoke the ambiguity rule. If it were, no contract would be safe from modification by construction. While there might have been a way to make the passenger liability limit more clear, we do not feel that the policy language was *reasonably* or *fairly* susceptible to more than one construction" and therefore was not ambiguous. *Garriguenc v. Love, supra* (emphasis added). *See also Westerman v. Richardson, supra* 43 Wis.2d at 595, 168 N.W.2d at 854 ("[w]hile it may be that there are ways to make the premium schedule clearer than it is . . . [t]here is no ambiguity.") (footnote omitted).

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.