Gary W. HERWIG, Plaintiff-Appellant,

v.

ENERSON & EGGEN, a partnership, Defendant and
Third-Party Plaintiff-Appellant,

GEHL COMPANY, a corporation, Defendant,

Robert HERWIG, Sr., Third-Party Defendant,

IOWA NATIONAL MUTUAL INSURANCE COMPANY,
Third-Party Defendant-Respondent.†

Court of Appeals

*No. 79–1474. Submitted on briefs April 23, 1980.—
Decided June 17, 1980.*
(Also reported in 295 N.W.2d 201.)

For the plaintiff-appellant the cause was submitted on
the briefs of *James C. Bohl* and *Quale, Hartmann, Bohl
& Evenson* of Baraboo.

For the defendant and third-party plaintiff-appellant
the cause was submitted on the briefs of *Bruce R. Ras-
mussen* of Beaver Dam.

---

† Petition for review granted.

For the third-party defendant-respondent the cause was submitted on the brief of *Ward I. Richter* and *Bell, Metzner & Seibold, S.C.*, of Madison.

Before Donlin, P.J., Foley, J., and Dean, J.

FOLEY, J.   Gary Herwig and Enerson & Eggen appeal from a judgment dismissing their causes of action against Iowa National Mutual Insurance Company, Enerson & Eggen's insurer.[1]  Gary Herwig was injured while operating a machine owned by Enerson & Eggen, but in the possession of his father, Robert Herwig. Iowa National denied coverage claiming that Robert Herwig had rented the machine from Enerson & Eggen and that the policy excluded machines that were rented. After a trial to the court, the court found that the transaction between Herwig and Enerson & Eggen was a rental and concluded that there was, therefore, no coverage. Because we conclude that the transaction was not an excluded rental within the meaning of the insurance policy, we reverse.

The construction of an insurance policy is a matter of law, *RTE Corporation v. Maryland Casualty Company,* 74 Wis.2d 614, 247 N.W.2d 171 (1976), and we determine questions of law independently with no deference to the conclusions reached by the trial court. *American Mutual Liability Insurance Company v. Fisher,* 58 Wis.2d 299, 206 N.W.2d 152 (1973). Our objective in interpreting an insurance contract is to ascertain and carry out the intention of the parties. *Home Mutual Insurance Company v. Insurance Company of North America,* 20 Wis.2d 48, 121 N.W.2d 275 (1963).

---

[1] The judgment dismisses the complaint of Gary Herwig and the complaint of Enerson & Eggen against Iowa National. From the pleadings, we conclude that Gary Herwig has not properly brought an action directly against Iowa National and therefore has no standing to object to the dismissal. Also, we note that the cause of action against Robert Herwig has been dismissed.

Where no ambiguity exists in the terms of the policy, we will not engage in construction but will rather merely apply the policy terms. *Rabinovitz v. Travelers Insurance Co.,* 11 Wis.2d 545, 105 N.W.2d 807 (1960). Whether ambiguity exists depends on the meaning the provision or term would have to a reasonable person of ordinary intelligence. 13 Appleman, *Insurance Law & Practice* §7384 (1976). Furthermore, any ambiguity should be resolved by examining the policy as a whole as well as the purpose of the clause or term in question in an attempt to determine the intent of the parties. 13 Appleman, *supra* §7385.

Words used in an insurance contract should be given their common, everyday meaning, *Schmidt v. Luchterhand,* 62 Wis.2d 125, 214 N.W.2d 393 (1974), and should be interpreted reasonably so as to avoid absurd results. *Olguin v. Allstate Insurance Company,* 71 Wis.2d 160, 237 N.W.2d 694 (1976). The test of coverage is what a reasonable person in the position of the insured would have believed to be covered, *Olguin, supra,* and the reasonable expectations of coverage of the insured should be honored. *Handal v. American Farmers Mutual Casualty Company,* 79 Wis.2d 67, 255 N.W.2d 903 (1977). Public policy favors finding coverage where the policy terms permit it. *Handal, supra;* 13 Appleman, *supra* §7386.

All parties agree that this dispute should be resolved as a matter of law. At trial, the witnesses testified consistently as to what occurred between Enerson & Eggen and Robert Herwig. There is no dispute as to the underlying facts. The only factual dispute the trial court perceived was whether the transaction was a rental. We agree that this is the one dispute in the case, but conclude that whether the transaction was a rental excluding coverage under the policy is a question of law and not of fact. We will, therefore, determine the issue independently, relying on the undisputed underlying facts.

Robert Herwig had been interested in purchasing a machine from Enerson & Eggen, but wanted to try it out first to see if it was suitable for use in his business. Enerson & Eggen agreed to let him use the machine for one day. The terms were that if Herwig decided to purchase the machine, he would pay no fee for the one day of use. If, however, he elected to return the machine, he would pay a fee of $7 for each hour of use. This fee was intended to cover Enerson & Eggen's cost of cleaning and restoring the machine after one day's use so the machine could still be sold as a new machine. Enerson & Eggen made no profit on the transaction if a sale did not result. Gary Herwig was injured during this one-day tryout. Robert Herwig subsequently returned the machine to Enerson & Eggen and paid $50, which he thought was the agreed price for cleaning the machine. Both parties to the transaction testified that it was not intended as a rental. Furthermore, Robert Herwig actually purchased a different machine shortly after the tryout.

We agree with Iowa National that the term "rental" is unambiguous and requires no construction. Iowa National urges that we accept the dictionary definition of rental, which it characterizes as "payment for use."[2] It contends that since Robert Herwig paid for the use of the machine, the transaction was clearly a rental. This is not, however, the issue in this case. The issue is whether the transaction between Enerson & Eggen and Robert Herwig was a rental agreement excluded from insurance coverage under the terms of the policy. To resolve this issue, we must look instead to the intent of the rental exclusion, the meaning an ordinary person would give to the term rental, and the reasonable expectations

---

[2] Webster's Third International Dictionary defines "rent" as: the amount paid by a hirer or lessee of personal property (as farming stock, machinery) to the owner for use thereof whether combined with rent for land or not . . . .

of coverage of Enerson &· Eggen. In examining these questions, we will avoid an interpretation that leads to an absurd result and will, consistent with public policy, favor coverage.

The intent of a rental exclusion is to limit the risk the insurer has undertaken. If an insured both sells and rents machines, the risk involved is greater than if the insured merely sells machines. In the business of Enerson & Eggen, however, tryouts of machines in an attempt to sell them is customary. Iowa National could have reasonably anticipated this practice and risk, which was incidental to their sales business. These brief tryouts are therefore not similar to the greater risk anticipated by the rental exclusion, and to hold that they are covered under the terms of the insurance contract would not be contrary to the intent of the exclusion.

We also conclude that a reasonable person of ordinary intelligence would not consider this transaction a rental but would understand a rental to mean a commercial transaction entered into for profit. *See* 7 Am. Jur. 2d *Automobile Insurance* §227 (1980) ; 6C Appleman, *Insurance Law & Practice* §4436 (1979).[3] As we have stated, Enerson & Eggen did not rent machines as a part of its business. There was no written leasing agreement. Robert Herwig testified that he had no desire to rent a machine, but was interested in purchasing one. He agreed to pay something to cover restoration and clean-up costs in the event he did not purchase. Enerson & Eggen made no profit from the $50 payment and did in fact have to clean up and repaint the machine after the

---

[3] Other jurisdictions have considered the meaning of similar exclusions in insurance contracts and have utilized similar reasoning. *See Wells v. Allstate Ins. Co.,* 327 F. Supp. 622 (D.C.S.C. 1971); *Christensen v. State Farm Mut. Auto Ins. Co.,* 52 Haw. 80, 470 P.2d 521 (1970) ; *Peterson v. Marlowe,* 264 N.W.2d 133 (Minn. 1977) ; *Crowell v. Maryland Motor Car Ins. Co.,* 169 N.C. 35, 85 S.E. 37 (1915) ; *Associated Indemnity Corp. v. McAlexander,* 168 Tenn. 424, 79 S.W.2d 556 (1935).

tryout. The essence of this transaction was an attempted sale, not a rental.

For similar reasons, we conclude that Enerson & Eggen would have had a reasonable expectation of coverage. Renting machines was not a part of its business, although allowing customer tryouts was. The fee was intended not to give Enerson & Eggen a profit, but to pay for the cleanup and restoration of the machine so it could eventually be sold as a new machine. This type of arrangement was necessary to sell machines and could have been anticipated by Iowa National. Under these circumstances, Enerson & Eggen was entitled to expect that it did not lose liability coverage when it allowed a tryout of one of its machines by a prospective buyer.

Finally, to interpret the policy to exclude coverage would cause an absurd result. It would allow Robert Herwig, not a party to the insurance contract and once a defendant in this case, to unilaterally determine coverage after the injury by simply purchasing the machine. By the agreement between Robert Herwig and Enerson & Eggen, there would then have been no fee for use of the machine. There would have been no rental even in the sense argued for by Iowa National. This would be an unreasonable interpretation of the insurance contract. The coverage afforded by the policy should be determined by the parties to the contract and not by a third party and should be determined at the time of the insured's loss, not at some later date when suit is perhaps contemplated.

*By the Court.*—Judgment reversed.