WESTERN CASUALTY & SURETY COMPANY, a foreign corporation, Plaintiff-Respondent,

v.

Edward C. BUDRUS, a/k/a Ed Budrus, Defendant-Appellant,

August RICHTER, Defendant.

Court of Appeals

*No. 82–1501. Submitted on briefs February 14, 1983.—Decided March 22, 1983.*
(Also reported in 332 N.W.2d 837.)

For the appellant the cause was submitted on the briefs of *Gay, Collman & Cameron* and *Richard A. Collman* of Thorp.

For the respondent the cause was submitted on the brief of *David E. Richie* and *Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.,* of Eau Claire.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.  August Richter appeals from a summary judgment dismissing his counterclaim against Edward Budrus' insurer, Western Casualty and Surety Company. The issue on  appeal is whether Western, under the terms of its policy, has an obligation to defend Budrus for the sale of mistagged seed to Richter.  Because we con-

clude that Western has an obligation to defend, we reverse.

The facts are undisputed, and the action is therefore appropriate for summary judgment. In June, 1979, Richter purchased 400 pounds of Birdsfoot Trefoil seed, a perennial seed high in protein for cows, from Budrus, who operates a feed mill and is insured by Western. Budrus packaged the seed in fifty-pound bags and labeled each bag "Birdsfoot." Four of these bags in fact contained "Rape" seed, which is an annual seed for pig feed.

In 1979, Richter planted the seed from two of the bags containing Birdsfoot seed. Satisfied with the harvest, Richter planted the remaining seed in 1981 on forty acres. As the crop grew, he discovered that he had planted mostly Rape seed, which was of no value to him. Budrus had previously terminated his liability insurance with Western on June 30, 1980.

Richter claims that as a result of Budrus' negligence, he incurred damages resulting in unnecessary expenses, crop loss, and production losses. The trial court held that the claim for loss of use of a forty-acre field constitutes property damage as that term is defined in the insurance policy. The trial court concluded, however, that the claimed damage did not occur during the period of time the insurance policy period covered and that Western therefore had no duty to defend.

The issue is whether there was an "occurrence" within the meaning of the insurance policy at a time when the policy was in force. The construction of an insurance policy is a question of law, *RTE Corp. v. Maryland Casualty Co.*, 74 Wis. 2d 614, 621, 247 N.W.2d 171, 175 (1976), that we review independently on appeal. *American Mutual Liability Insurance Co. v. Fisher*, 58 Wis. 2d 299, 304, 206 N.W.2d 152, 155 (1973). Our objective in interpreting an insurance contract is to ascertain and carry out the intention of the parties. *Home Mutual In-*

*surance Co. v. Insurance Co. of North America,* 20 Wis. 2d 48, 51, 121 N.W.2d 275, 277 (1963).

Where no ambiguity exists in the terms of the policy, we will not engage in construction, but will merely apply the policy terms. *See Rabinovitz v. Travelers Insurance Co.,* 11 Wis. 2d 545, 549–50, 105 N.W.2d 807, 810 (1960). Whether ambiguity exists in a contract is a question of law. *Capital Investments, Inc. v. Whitehall Packing Co.,* 91 Wis. 2d 178, 189, 280 N.W.2d 254, 259 (1979). Words used in an insurance contract should be given their common everyday meaning, *Schmidt v. Luchterhand,* 62 Wis. 2d 125, 133, 214 N.W.2d 393, 396 (1974), and should be interpreted reasonably to avoid an absurd result. *Olguin v. Allstate Insurance Co.,* 71 Wis. 2d 160, 165, 237 N.W. 2d 694, 697 (1976). The test of coverage is what a reasonable person in the insured's position would have believed to be covered, *id.* at 164, 237 N.W.2d at 696, and the reasonable expectations of coverage of the insured should be honored. *Handal v. American Farmers Mutual Casualty Co.,* 79 Wis. 2d 67, 78, 255 N.W.2d 903, 908 (1977). Public policy favors finding coverage where the policy terms permit it. *Herwig v. Enerson & Eggen,* 98 Wis. 2d 38, 40, 295 N.W.2d 201, 203 (Ct. App. 1980).

Western's insurance policy provides coverage for sums that Richter shall become legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence. We conclude that the term "occurrence" is unambiguous and requires no construction. The term "occurrence" is defined in the insurance policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Property damage is defined in the policy as "loss of use of tangible property which has not

been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

Western argues that Richter's claim does not allege damages resulting from loss of use of tangible property. It contends that crop loss and production losses for a crop that was never planted is not a loss of use of tangible property. The trial court concluded that Richter's claim was sufficient to constitute a claim for loss of use of forty acres of land. We agree. In *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 24, 288 N.W.2d 95, 98 (1980), our supreme court ruled that under the present rules of civil procedure, the pleadings are to be liberally construed with a view to substantial justice to the parties. Although not artfully worded, Richter's claim can be construed to include a claim for loss of use of a forty-acre field because Budrus sold Richter mistagged seed.

Western next argues that there was no occurrence during the policy period. Under the defined terms in the policy, an occurrence is an accident resulting in property damage. Western concedes that Budrus' sale of the wrong seed to Richter can be considered an accident within the meaning of its policy. It argues, however, that both the accident and resulting property damage must occur during the policy period. We disagree. The policy defines occurrence as an "accident . . . which results in property damage." There is no requirement that the resulting damage arise during the policy period. It requires only that the accident occur during the policy period. When the term "property damage" is defined, the policy requires only that the loss of property use be caused by an "occurrence during the policy period." Here, the negligent act of selling the mistagged seed, which caused the damage, occurred during the policy period.

Additionally, we conclude that Budrus would have a reasonable expectation of coverage. Budrus operated a feed mill, and part of that business included selling seeds for raising various crops. It is reasonable for him to expect insurance coverage for any damages resulting from negligently mistagging seed. Finally, to interpret the policy to exclude coverage would also cause an absurd result. It was only by chance that Richter planted the properly tagged seed in 1979. Coverage afforded under the policy should be determined by the parties to the contract and not by a third party's fortuitous act.

Western also argues that Richter's claimed damage is precluded under the exclusion portion of its policy. The trial court correctly determined that the exclusion does not apply. The exclusion provides in part:

This insurance does not apply:

. . . .
(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

. . . .
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;

Western reasons that Richter's claimed damages resulted from the seed's failure to perform as warranted and is therefore the basis for an action for misrepresentation or breach of warranty, which is excluded from coverage.

The exclusion applies to those situations where a product fails to meet a represented level of performance. That is not the situation here. Richter's cause of action is against Budrus for negligently selling the mistagged seed. Coverage for this cause of action is not excluded under the policy. We therefore conclude that Western has an obligation to defend Budrus for any claimed loss of use

of property resulting from the negligent sale of the mis-tagged seed.

*By the Court.*—Judgment reversed.