82 F.3d 420
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
WESTOWNE SHOES, INCORPORATED and, Carl A. Biwer Company, Plaintiffs,
Brown Group, Incorporated, Brown Group Retail, Incorporated
and Brown Group International, Incorporated,
Defendants-Appellants,
v.
CITY INSURANCE COMPANY, Intervenor-Appellee.
 No. 95-2328.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 5, 1995.
Decided April 11, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied May 14, 1996.
 
 Before WOOD, Jr., COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 The defendants manufacture shoes including the well-known "Naturalizer" brand. The plaintiffs, who sell "Naturalizers," claim that the defendants breached their contract by, among other things, selling cheap imports under the name "Naturalizer," thus undercutting the market for the real thing. But this case does not get us to the question of whether the shoe fits. Rather, this appeal concerns an insurance company's duty to defend its insured against a business tort and antitrust suit brought by an independent dealer. Because the district court correctly interpreted the insurance policy provisions at issue, we affirm its grant of declaratory judgment to the insurer.
 
 I.
 
 2
 The Brown companies listed in the caption ("Brown") manufacture, wholesale, and retail women's shoes, including the "Naturalizer" brand. Westowne and Biwer ("Westowne") retailed women's shoes and operated Naturalizer Specialty Stores in several Wisconsin malls. Before June 1987, Brown and Westowne made a series of agreements under which Westowne was authorized to use the "Naturalizer" trade name, to display the "Naturalizer" sign, and to sell women's shoes manufactured by Brown under the "Naturalizer" trade name. Although "Naturalizer" was the principal line of shoes sold in Westowne's stores, Westowne also sold casual shoes manufactured by other companies.
 
 
 3
 In 1987, Brown announced to Westowne a "standard of purity" under which Brown forbade Naturalizer Specialty Stores such as Westowne's to sell any line of shoes other than "Naturalizer." Under this standard, independent retailers such as Westowne could either sell only "Naturalizers" and keep the "Naturalizer" trade name, or continue to sell both "Naturalizer" and non-"Naturalizers" but give up the "Naturalizer" trade name. Westowne claims it wanted to use the name and tried to comply with the purity standard but encountered problems such as insufficient replacement stock and declining sales. Westowne then began to experience financial difficulties. Westowne sought permission to sell non-"Naturalizer" shoes which Brown refused to grant.
 
 
 4
 Westowne eventually sued Brown in Wisconsin state court alleging unfair competition, antitrust violations, misrepresentation, unfair trade practices, false and deceptive marketing practices, and other claims ("the underlying action"). Westowne's far-ranging complaint alleged that Brown's "standard of purity" was unlawful and discriminatory. It alleged that Brown failed to supply Westowne with the casual "Naturalizer" shoes as promised and that Brown's subsidiaries and divisions were competing in Westowne's marketing area and were permitted to sell casual shoes from non-Brown manufacturers. The complaint also asserted that Brown permitted its own stores to sell non-"Naturalizer" shoes, even though Westowne could not, and that Brown charged its own retailers lower prices than Westowne.
 
 
 5
 Brown removed the underlying action to federal court, counterclaimed against Westowne, and tendered defense of the case to its general liability insurer, City Insurance Company ("City Insurance"), which accepted the defense subject to a reservation of rights. City Insurance had issued three Comprehensive General Liability insurance policies to Brown from 1986 to 1989, including fiscal year 1987, the year in question. Each of the City Insurance policies provided Brown with "advertising injury" and "personal injury" coverage. The district court granted City Insurance leave to intervene and it filed an intervenor complaint against Brown relating to insurance coverage. City Insurance later filed a declaratory judgment motion asking the district court to find no insurance coverage as a matter of law.
 
 
 6
 The district court granted City Insurance's motion for declaratory judgment. Brown then moved to alter the judgment and/or for reconsideration of the decision. The district court denied Brown's motion for reconsideration and Brown filed a timely notice of appeal.[1]
 
 
 7
 The district court had diversity jurisdiction over the underlying case and pendent jurisdiction over the intervenor complaint. This court has jurisdiction under 28 U.S.C. § 1291, as the district court entered final judgment on the intervenor complaint pursuant to Fed.R.Civ.P. 54(b). This court reviews the district court's decision de novo, applying the same summary judgment criteria as the district court. See Scottish Guarantee Ins. Co., Ltd. v. Dwyer, 19 F.3d 307, 309 (7th Cir.1994) (coverage dispute under Wisconsin law concerning insurance policy's personal injury provision).[2]
 
 II.
 
 8
 City Insurance's duty to defend Brown is determined by the allegations in Westowne's complaint. Newhouse v. Citizens Security Mutual Ins. Co., 176 Wis.2d 824, 835-36, 501 N.W.2d 1, 5 (1993). No duty to defend exists if the insuring language does not potentially cover the complaint's allegations. However, if there is any possibility of recovery on any covered claim, an insurer must provide a defense to the entire lawsuit. School Dist. of Shorewood v. Wausau Ins. Co., 170 Wis.2d 347, 366, 488 N.W.2d 82, 88 (1992).
 
 
 9
 This case turns on the interpretation of two provisions of the relevant insurance policies: those insuring against "advertising injury" and those insuring against "personal injury." The district court concluded that neither provision covered Westowne's allegations against Brown in the underlying case. Brown contends that one or both of these provisions covers Westowne's litigation, resulting in a duty to defend by City Insurance.
 
 A. "Advertising Injury" Provision
 
 10
 The "advertising injury" provision in Brown's insurance policy with City Insurance states:
 
 
 11
 "Advertising injury" means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation or right of privacy, unfair competition, or infringement of copyright, title, or slogan....
 
 
 12
 (Emphases supplied.) The district court concluded that the advertising injury provision did not cover the type of unfair competition Westowne alleged in the underlying suit, nor did the allegedly unfair competition take place in the context of advertising activities. In its decision on Brown's reconsideration motion the district court determined that this court's interpretation of "unfair competition" in Curtis-Universal v. Sheboygan Emergency Memorial Services, Inc., 43 F.3d 1119 (7th Cir.1994), did not require reconsideration of its earlier decision.
 
 
 13
 The plain language of the "advertising injury" clause excludes a majority of Westowne's allegations in the underlying action against Brown, including breach of contract, promissory estoppel negligent misrepresentation, strict misrepresentation, and antitrust and statutory unfair trade practices. None of these claims is mentioned as a potential source of liability in the policy. But Westowne does allege in its complaint a count denominated "common law unfair competition," which could potentially fall within the meaning of the "advertising injury" provision. "What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." Curtis-Universal, 43 F.3d at 1122 (citations omitted). Thus, the first question we face is whether the complaint's allegations fall within the definition of "unfair competition" in the "advertising injury" provision.
 
 
 14
 In Curtis-Universal we found that a complaint alleging (among other things) tortious interference with contractual relations fell within the realm of "unfair competition" as it appeared in an "advertising injury" insurance provision identical to the one before us. 43 F.3d at 1124-25. But we noted that a broad interpretation for unfair competition "cannot be right", as "[i]t would turn insurance against liability for 'advertising injury' into insurance against liability for antitrust violations." Id. at 1123. We stated that "unfair competition" must "bear[ ] its normal legal meaning." Id. at 1123. That would include a variety of tortious misconduct by one competitor toward another, but it also was concerned mainly with harmful speech. Id. at 1123-24. This limitation was important in Curtis-Universal, as we wanted to more narrowly interpret the phrase in light of the word "advertising," rather than broadly as the modern law of business torts might allow. Id. at 1124. Thus, we held in Curtis-Universal that an allegation the defendant "disseminated false information about" the insured stated a claim for unfair competition within the "advertising injury" provision. Id. at 1124. In the context of the case before us, a working definition of "advertising injury" after Curtis-Universal would be "a false or injurious representation disseminated or published in promoting a product."
 
 
 15
 Brown argues certain of Westowne's allegations bring it within this definition, including that (1) Brown engaged in "false and deceptive labeling and other false and deceptive marketing practices" when it attached the "Naturalizer" name to poor quality shoes and offered them at deep discounts to the public, thereby cheapening the Naturalizer name, label and trademark; (2) Brown directly and unfairly competed with Westowne; and (3) the complaint contains three direct references to "advertising." Brown claims these allegations come under "improper solicitation" and "misrepresentation" and therefore fall within the "advertising injury" insuring provision.
 
 
 16
 The complaint alleges that Brown did not supply Westowne with the shoes it promised and that Brown let its retail outlets sell shoes Westowne could not. But these claims describe modern business torts, not allegations concerning harmful speech which we recognized as "advertising injury" in Curtis-Universal. 43 F.3d at 1124. Further, Westowne's advertising claims allege Westowne spent money on advertising before and after Brown adopted the "purity" standard. Such claims do not relate to Brown's insuring of its own advertising activities.
 
 
 17
 The closest Westowne's allegations come to claiming "unfair competition" under the advertising injury provision is the allegation that Brown falsely and deceptively labelled and sold cheaper versions of "Naturalizer" shoes. The district court considered and rejected this possibility on the ground that "marketing" shoes was not the same as "advertising" them.
 
 
 18
 Coverage (and thus a duty to defend) under the advertising liability endorsement requires a showing that the alleged offense occurred in the course of the insured's advertising activities. B.R. Ostrager & T.R. Newman, Handbook on Insurance Coverage Disputes § 7.04[b], p. 284 (8th ed. 1995) (and citations therein). Brown's policy with City Insurance also requires that the offense occur "in the course of the named insured's advertising activities." No allegations concerning Brown's advertising appear anywhere in Westowne's complaint. There is no mention of any published promotional material that Brown used. Westowne makes no claim that the cheaper "Naturalizer" shoes were ever part of an advertising campaign. The mere labelling of cheap shoes is not advertising. Brown's business decision to sell these shoes with the brand name "Naturalizer" is more properly seen as product identification than advertising. Although there is no easy and widespread definition for "advertising activity",[3] we can safely conclude that it does not encompass mere product labelling. Without a basis to conclude that the alleged offense occurred in the course of advertising activities by Brown, a finding of potential insurance coverage triggering a duty to defend would not be proper.
 
 
 19
 If we accepted Brown's argument that Westowne's allegations arose from "advertising activity," that phrase would have little meaning. See, e.g., Bank of the West v. Superior Court (Industrial Indem. Co.), 2 Cal.4th 1254, 1276-77, 833 P.2d 545, 560, 10 Cal.Rptr.2d 538, 553-54 (1992) (without causal connection between claims and insured's advertising activities, provision would encompass virtually every claim related to insured's business because "virtually every business that sells a product or service advertises"). Brown's construction of "advertising activity" would produce unreasonable results because it would transform any effort to sell a product into open-ended coverage. An insurance policy shall not be construed so as to produce an unreasonable or absurd result. Olguin v. Allstate Ins. Co., 71 Wis.2d 160, 165, 237 N.W.2d 694, 697 (1978).
 
 
 20
 In its complaint Westowne does not allege damages such as defamation or slander which could arguably be caused by some advertising publication or representation. This distinguishes this case from Curtis-Universal. Instead, Westowne claims purely economic damages. To interpret the "advertising injury" provision as Brown submits would be to take it out of its definition in Curtis-Universal. Brown may be arguing for insurance coverage for antitrust or business tort activity, something this court warned against in Curtis-Universal. 43 F.3d at 1123. This is not the type of conduct for which insurance can be purchased generally and it is certainly not the type for which the "advertising injury" provision contemplated coverage. See Bank of the West, 2 Cal.4th at 1277, 833 P.2d at 560, 10 Cal.Rptr. at 553 ("insureds generally expect to obtain such broad coverage, if at all, only by purchasing several forms of insurance, including coverage for 'errors and omissions liability,' 'directors and officers liability,' 'completed operations and products liability,' and/or other coverages available as part of a CGL policy.")
 
 
 21
 Whether Westowne likes it or not cheap shoes labeled "Naturalizer" are nevertheless "Naturalizers." Simply labeling them as such is an accomplished fact--it is not the result of advertising activity that results in an advertising injury. But even if merely labelling cheap shoes "Naturalizer" and offering them for sale could be construed as "advertising activity," other courts interpreting this provision still require that the offense itself arise out of the advertising activity. See Handbook on Insurance Coverage Disputes at p. 286 (and citations therein). Here the actual sale of the shoes to consumers, not their labelling, allegedly caused Westowne's damages. Westowne filed suit claiming economic damages, such as lost profits, and an inferior competitive position because of Brown's actions. These damages resulted from the sale of the cheaper "Naturalizer" shoes, not their labelling. Accordingly, Brown has also failed to establish a causal connection between Westowne's claimed damages and what Brown characterizes as the "advertising activity."
 
 
 22
 For the same reasons, we reject Brown's attempt to squeeze Westowne's allegations concerning trademark infringement into this court's interpretation of "unfair competition" in Curtis-Universal. 43 F.3d at 1123. Westowne's claim that it built up the "Naturalizer" trademark only to have it devalued by Brown's actions not only was ruled on in Brown's favor on summary judgment, but it does not fit into this court's interpretation of "unfair competition" in Curtis-Universal as dissemination of false information about the insured. 43 F.3d at 1124.
 
 
 23
 We agree with the district court's conclusions that no causal connection exists between Westowne's claimed damages and any "advertising activity" or even what Brown characterizes as "advertising activity." Westowne's complaint thus does not allege any offense potentially covered by the "advertising injury" insuring provision, and City Insurance did not need to defend Brown based upon that provision.
 
 B. "Personal Injury" Provision
 
 24
 The "personal injury" provision in Brown's insurance policy with City Insurance states:
 
 
 25
 Personal injury means, (1) Bodily injury, (2) Any injury a natural person may suffer to his person, reputation, character or feelings, and (3) any injury to intangible property sustained by any organization, including but not limited to false arrest, false eviction, malicious prosecution, tortuous [sic] intereference [sic] with contractual rights, libel, slander or defamation; but the term Personal Injury does not include under subdivision (2) and (3) any injury arising out of discrimination by reason of race, color, or creed which is unlawful under State or Federal Law.
 
 
 26
 (Emphasis supplied.)
 
 
 27
 The district court reviewed the history of this provision, including language Brown drafted which later became part of the standard policy. It noted its sloppy draftsmanship and attempted to give a reasonable construction to its language. The district court interpreted the provision to mean that the causes of action listed after the "injury to intangible property" clause "are meant only to relate to, and are therefore a limited extension of, those already enumerated." The district court rejected Brown's assertion that this provision covered any injury to intangible property sustained by any organization however caused. It did so because it interpreted the enumerated causes of action as claims based on injuries uniquely suffered by individuals rather than by organizations. According to the court, this interpretation was "the only one which treats the enumeration as something more than mere surplusage, and recognizes that while the manuscripted endorsement did indeed expand the coverage beyond the original narrow version, it expanded it to a limited extent."
 
 
 28
 On Brown's motion for reconsideration the district court reaffirmed its ruling. It did not find the personal injury provision ambiguous in its original decision, but interpreted it according to standard rules of construction. Alternatively the lower court related how if it had found the provision ambiguous, it would be construed against Brown as the drafter, and how the record evidence established that the provision was not intended to cover an unlimited number of business torts suffered by organizations, as Brown had asserted. It thus again rejected Brown's contention that City Insurance had a duty to defend Brown in the underlying action.
 
 
 29
 On appeal Brown has offered a plethora of arguments in support of its conclusion that the "personal injury" provision covers Westowne's claims. We consider each in turn.
 
 
 30
 1. Plain meaning.
 
 
 31
 Brown asserts that the plain meaning of the "personal injury" provision ("any injury to intangible property sustained by any organization") results in coverage and thus a duty to defend. For Brown the "unambiguous definition of 'personal injury' includes the unmodified and unrestricted concept of injury to intangible property sustained by any organization."
 
 
 32
 Insurance policy language such as this provision is to be given a reasonable reading. Scottish Guarantee Ins. Co., Ltd., 19 F.3d at 309 (citing inter alia School Dist. of Shorewood, 488 N.W.2d at 88-89). The district court correctly concluded that no insuring provision could be so universal. No insurer would cover any conceivable business tort (including intentional wrongs) committed by a world-wide manufacturer and distributor as long as it caused injury to intangible property. The district court reasonably concluded that the phrase "arising out of" or "as a result of" qualified the list of enumerated causes of action but was incorrectly dropped from this poorly drafted provision. The lower court gave the "including but not limited to" language a reasonable reading to preserve the list of claims as representative while recognizing that the provision expanded coverage beyond the original version without doing so in an unlimited manner. The correctness of this conclusion is confirmed when contrasted to Brown's construction, which would render the balance of the provision surplusage. Standard contract construction principles preclude such a result. Olguin, 237 N.W.2d at 697.
 
 
 33
 2. Contra preferentem.
 
 
 34
 Brown submits that whether or not the district court found the personal injury endorsement ambiguous, it improperly construed it against Brown as drafter of the provision. Brown relies here on the doctrine of contra preferentem, which construes a disputed phrase against its drafter. Black's Law Dictionary, p. 327 (6th Ed.). Brown in its motion for reconsideration, rather than the district court, introduced the concept of ambiguity into the contract analysis. The lower court stated it had not found the personal injury provision ambiguous. Even if the provision was vague, the lower court correctly concluded that Brown had drafted it. Moreover, Brown's status as a sophisticated business entity rendered it at least equal to City Insurance, rendering inapplicable the rationale for the doctrine of contra preferentem. For these reasons Brown cannot properly rely on this concept for insurance coverage.
 
 
 35
 3. Ejusdem generis.
 
 
 36
 Brown submits the district court limited coverage to causes of action specifically enumerated in the personal injury provision, improperly restricting the general term (coverage for "any injury to intangible property sustained by any organization"), notwithstanding the clear manifestation of contrary intent. See State v. Campbell, 102 Wis.2d 243, 246, 306 N.W.2d 272, 273 (Ct.App.1981). Brown contends that in doing so the district court improperly applied the doctrine of ejusdem generis.
 
 
 37
 The district court did not refer to the rule of ejusdem generis. As discussed above, we conclude the district court properly interpreted the "including but not limited to" language in the personal injury endorsement. Rather than rendering this phrase meaningless, the district court gave it a reasonable interpretation that preserved its plain meaning as well as that of the list of enumerated causes of action. We find no basis to conclude the district court even applied the rule of ejusdem generis, properly or otherwise.
 
 
 38
 4. Tortious interference with contract.
 
 
 39
 Brown also asserts City Insurance has a duty to defend it because the factual allegations in Westowne's complaint support an arguable claim for tortious interference with contract, one of the offenses specifically enumerated in the personal injury endorsement.
 
 
 40
 Brown's argument rings hollow because, as it recognizes, a claim for tortious interference with contract appears nowhere in Westowne's complaint. The only contract of any type alleged in Westowne's complaint is a contract between Brown and Westowne. Although Wisconsin recognizes a cause of action for tortious interference with contract, one cannot tortiously interfere with one's own contract. Wausau Medical Center v. Asplund, 182 Wis.2d 274, 297, 514 N.W.2d 34, 44 (Ct.App.1994). Further, intent to interfere is a required element of this tort. Cudd v. Crownhart, 122 Wis.2d 656, 659-60, 364 N.W.2d 158, 160 (Ct.App.1985). Westowne never alleges that Brown intentionally interfered with third parties with whom Westowne was dealing. Therefore, Westowne did not allege facts to support a claim for tortious interference with contract.
 
 
 41
 5. Westowne's "unfair competition" claims.
 
 
 42
 Brown creatively contends City Insurance has a duty to defend it because the activity alleged in Westowne's complaint is "like or related to" the causes of action enumerated in the personal injury endorsement. The duty allegedly exists because Westowne's claims and those listed in the provision "are all part of a wide range of activity known as 'unfair competition'."
 
 
 43
 Brown's argument must be rejected for three reasons. First, as we noted above, Westowne's allegations do not amount to a claim for common law unfair competition. Second, Brown identifies the cause of action by its label, which is improper for determining insurance coverage. Curtis-Universal, 43 F.3d at 1122. Third, even if we concluded that Westowne's allegations amounted to a claim for unfair competition, that umbrella concept is not necessarily similar to tortious interference with contractual rights, the cause of action recognized in the personal injury provision.[4]
 
 III.
 
 44
 The district court properly interpreted the two insurance provisions at issue not to cover Westowne's claims against Brown. City Insurance had no duty to defend Brown in the underlying action. Accordingly, the district court's orders are
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 In the underlying case the district court granted Brown's summary judgment motion and dismissed Westowne's complaint. Brown's counterclaim against Westowne is pending in the district court
 
 
 [2]
 The district court applied Wisconsin substantive law. The parties do not dispute this decision on appeal, and a review of the district court's September 8, 1994 order indicates that its choice of law is correct
 
 
 [3]
 But see Handbook on Insurance Coverage Disputes at p. 285 and citations therein; e.g. Int'l Ins. Co. v. Florists' Mut. Ins. Co., 201 Ill.App.3d 428, 433, 559 N.E.2d 7, 10 (1st Dist.1990) ("advertising" within meaning of endorsement has been defined as widespread distribution of promotional materials to public at large)
 
 
 [4]
 Both parties have raised other arguments to support affirmance or reversal. We have considered each of those that has been properly presented but none is persuasive or worthy of discussion in this opinion. See, e.g., English v. Cowell, 10 F.3d 434, 440 (7th Cir.1993)